*229 Judge BAKER
delivered the opinion of the Court.
A general court-martial composed of members convicted Appellant, contrary to his pleas, of eight specifications of assault consummated by battery upon a child under sixteen years, in violation of Article 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 928 (2006). The adjudged and approved sentence included confinement for three years, reduction to pay grade E-l, and a bad-conduct discharge.
On review, the United States Air Force Court of Criminal Appeals affirmed.[1]
We granted review of the following issue: WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION IN ADMITTING EVIDENCE THAT APPELLANT MAY HAVE ATTEMPTED TO KILL OR INJURE THE ORIGINAL TRIAL COUNSEL.
BACKGROUND
Appellant and Kari Staton were in a relationship for five years and married for four. Some time after they were married Kari Staton’s six-year-old son from a previous marriage, CJ, came to live with them. In Kari Staton’s opinion, CJ was not “an easy child to deal with.” Appellant would punish CJ when he got into trouble. About six months after CJ moved in, the punishment became physical.
Each of the specifications of Appellant’s charge correlate to different implements Appellant used on CJ in what he termed physical “discipline,” ranging from a fist, to a flyswatter, a golf club, a wire coat hanger, a weight-lifting belt, a leather belt, and a battle dress uniform belt. In July 2007, Appellant grabbed CJ (then eleven years old) by the throat, raised him several inches off the ground and slammed his head hard enough to leave a “groove” in the wall.
On August 2, 2007, Appellant stated to a mental health therapist, Calyn Crow, that he had on many occasions struck CJ with a belt and had recently banged his head into a wall. The next day, Lynn Merrit-Ford, the program director of a local social services department, left a voice mail to inform Appellant that an investigation was underway.
Captain (Capt) Stephanie Gilmore was the Chief of Military Justice at the Space Wing legal office at Buckley Ar Force Base, Colorado. She had represented the Government at two Article 32, UCMJ, 10 U.S.C. § 832 (2006), hearings involving Appellant. She had also seen Appellant a number of times around the base. On the morning of May 28, 2008, Capt Gilmore parked in the commissary parking lot before a wing run. As she walked toward the gym, she saw a car approach her driving quickly and “could see through the front windshield of the car ... that it was Staff Sergeant Tim Staton.” The ear “did not ... slow down,” was “heading towards [Capt Gilmore],” and “swerved at the last minute to miss [Capt Gilmore].” Capt Gilmore reported the incident and was reassigned from her role as trial counsel in the ease. Appellant received a letter of reprimand for the incident.
Prior to trial, the defense filed a motion in limine under Military Rules of Evidence (M.R.E.) 403 and 404(b) to preclude the Government from offering evidence involving the vehicle incident as prior uncharged misconduct or as rebuttal to any good military character evidence the defense might introduce. In the motion, the defense stated that “SSgt Staton’s alleged conduct while driving does not relate to the present charges. Nor does the alleged conduct fall into any of the other enumerated [M.R.E. 404(b)] exceptions.” The Government responded during argument on the motion that “taking steps to intimidate [trial counsel] to prevent the court-martial from going forward is analogous [to witness intimidation] and shows that he has consciousness of guilt, he doesn’t want the proceeding to continue, or he wants to at least to interfere [sic] with the smooth operation of those proceedings by making intimidating acts.”
In written findings of fact and conclusions of law the military judge concluded that “[e]vidence of intimidation of witnesses or *230 members of the prosecution is evidence which tends to show consciousness of guilt on the part of the accused as discussed in United States v. Cook [48 M.J. 64 (C.A.A.F.1998)].” With respect to balancing under M.R.E. 403, the military judge concluded, “Any danger of unfair prejudice is minimal and can be addressed with a tailored instruction.”
Appellant was subsequently tried before a general court-martial for eight specifications of assault committed by battery upon a child. The Government’s case included photographs of the dent in the wall, as well as testimony from Calyn Crow (the mental health therapist to whom SSgt. Staton self-reported); Lynn Merrit-Ford, a social services program director, who spoke to Appellant after he spoke with Ms. Crow; Pamela Wamhoff, a family advocacy officer assigned to Appellant’s case; Kari Staton (Appellant’s former wife); CJ; and Capt Gilmore. Capt Gilmore testified that on May 28, 2008, Appellant drove his car at her while she was in a parking lot, attempting to intimidate her. Appellant disputes the admission of Capt Gilmore’s testimony as evidence of uncharged misconduct.
Appellant claimed that while the incidents with his stepson CJ took place, they fell within the parental discipline defense. Appellant was found guilty of all specifications.
DISCUSSION
This Court reviews the military judge’s evidentiary rulings for an abuse of discretion. United States v. McCollum, 58 M.J. 323, 335 (C.A.A.F.2003). We review the admissibility of uncharged misconduct under M.R.E. 404(b) using the three-part test articulated in United States v. Reynolds:
1. Does the evidence reasonably support a finding by the court members that appellant committed prior crimes, wrongs or acts?
2. What “fact ... of consequence” is made “more” or “less probable” by the existence of this evidence?
3. Is the “probative value ... substantially outweighed by the danger of unfair prejudice”?
29 M.J. 105, 109 (C.M.A.1989) (ellipses in original) (citations omitted).
Evidence of uncharged misconduct is impermissible for the purpose of showing a predisposition toward crime or criminal character.[2] However, uncharged misconduct can be admitted for “other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.”[3] M.R.E. 404(b). In Cook, this Court concluded that one of the “other purposes” for which uncharged misconduct may be admissible is evidence of “consciousness of guilt.” 48 M.J. at 66.
The parties agree that Reynolds provides the proper framework to review for error in this ease. They also agree that prong one of the test is satisfied because the members could reasonably conclude that the incident occurred. However, the parties do not agree as to whether the incident in question reflects consciousness of guilt. Further, to the extent it does, the parties do not agree whether the probative value of such an evi-dentiary inference was outweighed by the danger of unfair prejudice. This Court’s analysis, thus, turns on prongs two and three of the Reynolds test.
Prong two of the test asks whether the evidence makes a “fact [that is] of consequence” in the case “more probable or less *231 probable.” This is a question of logical relevance. See M.R.E. 401.
The Government contends, as the military judge concluded, that the behavior of intimidating a prosecutor is indicative of “consciousness of guilt” and analogous to instances of witness intimidation. Appellant disputes the comparison to witness intimidation, arguing that where witness intimidation could prevent someone from testifying, prosecutor intimidation would have no corresponding favorable outcome.[4] Moreover, Appellant proffers, the act of driving aggressively toward Capt Gilmore could be an expression of frustration with being wrongly accused, rather than a reflection of consciousness of guilt.
It is well established that witness intimidation is relevant evidence to demonstrate consciousness of guilt. Cook, 48 M.J. at 66.[5] However, courts have not had as many occasions to address the subject of prosecution intimidation. Both parties cite United States v. Copeland, 321 F.3d 582 (6th Cir.2003), in support of their arguments; it is the only federal case the parties cite on point.
In Copeland, the issue centered on the admission of jailhouse statements by two defendants, who were overheard by a third inmate, discussing “their intention to pay someone $500 to ‘get,’ that is, harm, the Assistant United States Attorney” handling their case. Id. at 597. The Sixth Circuit concluded, first on the question of spoliation,[6] that “there was no evidence in the record that suggests that the removal of [the prosecutor] would have had a significant effect upon the government’s success at trial.” Id. at 598. Thus, the statements did not indicate the defendants’ intention to destroy evidence and such threats did not per se constitute evidence of spoliation. Id. As to eonseiousness of guilt, the court concluded the statements were probative, “but the lack of specificity linking the statements to the charged conduct permits only a weak inference.” Id. at 598.
Appellant cites Copeland for the proposition that threats against prosecutors are less probative than threats against witnesses, if probative at all. The Government cites Copeland for its ultimate conclusion that “the statements ... possess some probative value as to the defendants’ consciousness of guilt.” Id.
We conclude that both in concept and in the circumstances of this case, the evidence of prosecutor intimidation raises an inference from which a factfinder could reasonably infer consciousness of guilt. While Copeland qualitatively distinguished witness intimidation from prosecutor intimidation on the rationale that the prosecutor intimidation at issue did not involve spoliation of evidence, we believe the real question is not one of analogy to witnesses, but one of consequence. If an accused seeks to intimidate a prosecutor handling his case, is such an act probative of consciousness of guilt?
This question may be informed by the sort of cost-benefit analysis that Appellant urges this Court to consider (and which features prominently in Copeland), which is, what would the accused gain from doing this? But that question presumes the issue to be solely a matter of spoliation. Conduct, as courts well know, is not always driven by the rational cost-benefit analysis of the probable effects of one’s behavior. To the contrary, human nature sometimes prompts persons to strike out at those who seek to reveal misconduct or expose illegal acts. This might be done in anger, frustration, fear, an effort to *232 deter or all four reasons at once.[7] Whether such an inference is well founded in context is for the factfinder to decide. That is also why the third prong of the Reynolds test in such eases as in this case requires careful contextual analysis.
The third prong of the Reynolds test requires a weighing of probative value and the danger of unfair prejudice; if the probative value is “substantially outweighed” by the danger of unfair prejudice, then the evidence should be excluded. The general risk, of course, is that members will treat evidence of uncharged acts as character evidence and use it to infer that an accused has acted in character, and thus convict. That risk was heightened in this case because the Government argued to the members that Appellant’s conduct was driven by anger and a volatile personality.
Thus, on the one hand, the members might have taken the evidence of Appellant’s aggression toward the trial counsel and extract from that the impermissible character-driven conclusion that he was a violent person and therefore guilty of the charged offense.
On the other hand, the military judge was cognizant of this concern. He gave the parties ample opportunity to argue their positions and he reached his conclusions of law following a deliberate application of the Reynolds test on the record. And while another judge might not characterize “[a]ny danger of unfair prejudice” as “minimal,” as the military judge did in this case, we do agree with the military judge that in this case the risk was addressed with a detailed and “tailored instruction regarding appropriate use of this information.”[8]
In short, the military judge did not apply the wrong law or erroneously reach facts. His limiting instruction and statements on the record demonstrate knowledge and correct application of the law. In view of our analysis above, the military judge did not abuse his discretion in admitting evidence of Appellant’s uncharged misconduct.
CONCLUSION
The decision of the United States Air Force Court of Criminal Appeals is affirmed.
APPENDIX
The military judge’s limiting instruction stated:
You may consider the evidence regarding the accused driving towards Captain Gilmore for the limited purpose of its tendency, if any, to indicate an intent to intimidate the prosecution in this case and therefore as evidence of consciousness of guilt. You may consider this evidence only under the following circumstances: First, you may not consider the evidence at all unless you believe it was the accused driving the vehicle in question. Second, you may only consider this evidence if you believe it indicates an intent by the accused to intimidate the prosecution in his ease and that was thus evidence of consciousness of guilt.
You may not consider this evidence for any other purpose, and you may not conclude from this evidence that the accused is a bad person, or has general criminal tendencies and that he therefore committed the offenses charged. Each offense must stand on its own and you must keep the evidence of each offense separate. The prosecution’s burden of proof to establish the accused’s guilt beyond a reasonable *233 doubt remains as to each and every element of each offense charged.

. United States v. Staton, 68 M.J. 569, 575 (A.F.Ct.Crim.App.2009).

. See, e.g., United States v. Diaz, 59 M.J. 79, 94 (C.A.A.F.2003) (military judge abused his discretion in admitting evidence of other injuries appellant allegedly inflicted on his daughter in an effort to establish that he killed his daughter); United States v. Rhodes, 61 M.J. 445, 453 (C.A.A.F.2005) (military judge abused his discretion in admitting evidence of a meeting between a key government witness and appellant to show appellant’s consciousness of guilt).

. The Government also asserts that Appellant opened the door to character evidence because the defense called three military character witnesses at trial. We disagree. The prosecutor intimidation evidence was introduced before Appellant's good military character evidence, therefore it is not properly rebuttal evidence.

. Appellant asserts “it is unreasonable to conclude that the absence of an attorney would stop a trial from beginning.”

. See also United States v. Gatto, 995 F.2d 449, 454 (3d Cir.1993) (jurors may note threats or intimidation of witnesses); United States v. Mickens, 926 F.2d 1323, 1328-29 (2d Cir.1991) (defendant’s hand gesture in the shape of a gun may be considered by jury); United States v. Maddox, 944 F.2d 1223, 1230 (6th Cir.1991) (jurors may consider defendant’s alleged mouthing of the words "you’re dead”).

.Spoliation, used here and in Copeland, refers to ”[t]he intentional destruction, mutilation, alteration, or concealment of evidence.” Black's Law Dictionary 1531 (9th ed.2009).

. The Copeland court states, "[t]here are many conceivable reasons why a defendant awaiting trial would threaten to harm the prosecutor, including simple frustration with being wrongly accused.” 321 F.3d at 598. The Copeland court provides no empirical data or evidence for this statement and we do not adopt it as part of our analysis. However, we do note that the military judge contemplated such a possibility when considering Appellant's motion: in addressing trial counsel he asked, in reference to a frustrated innocent accused as opposed to a frustrated guilty accused, ”[W]ith respect to consciousness of guilt, how do I differentiate between these two people?”

. See the text of the military judge's instruction which appears in the Appendix to this opinion.