**UNITED STATES of America**

v.

**Brian P. HICKERSON, Staff Sergeant (E–6), U.S. Marine Corps.**

**NMCCA 201100111.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 12 May 2011.

31 Oct. 2012.

For Appellant: LT Daniel LaPenta, JAGC, USN; LT Kevin Quencer, JAGC, USN.

For Appellee: Maj Paul Ervasti, USMC.

Before J.R. PERLAK, B.L. PAYTON-O'BRIEN, R.Q. WARD, Appellate Military Judges.

WARD, Judge:

A panel of members with enlisted representation sitting as a general court-martial convicted the appellant, contrary to his pleas, of one specification of transferring obscene material over the Internet,[1] one specification of attempting to entice a minor to engage in illegal sexual activity,[2] two specifications of possessing child pornography,[3] and one specification of receiving child pornography,[4] all in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The members sentenced the appellant to 20 years of confinement, reduction to pay grade E–1, forfeiture of all pay and allowances for 20 years, and a dishonorable discharge from the U.S. Marine Corps. The convening authority approved the sentence as adjudged.[5]

The appellant raises eight assignments of error (AOE).[6] After consideration of the pleadings of the parties, the record of trial, and oral argument, we hold that the mere existence of the federal statute is not an element of a crime or offense not capital under clause (3), Article 134, UCMJ. We find the remaining assignments of error to be without merit and no error materially prejudicial to the substantial rights of the appellant was committed. Arts. 59(a) and 66(c), UCMJ.

## I. Background

In 2006, the appellant began chatting online with Ms. CG via Yahoo! Instant Messenger. Although Ms. CG's online profile identified her as a 13–year–old, in reality she was an adult volunteer with the organization known as "Perverted Justice." During his chats with Ms. CG, the appellant discussed engaging in sexual acts with her and meeting in person. Although they ultimately agreed to meet on a specific occasion and time, the appellant failed to show up at the meeting.

---

1. Charged in violation of 18 U.S.C. § 1470.

2. Charged in violation of 18 U.S.C. § 2422(b).

3. Charged in violation of 18 U.S.C. § 2252A(a)(5)(B).

4. Charged in violation of 18 U.S.C. § 2252A(a)(2)(A).

5. To the extent that the CA's action purports to direct that the punitive discharge will be executed after final judgment it is a legal nullity. *See United States v. Tarniewicz*, 70 M.J. 543, 544 (N.M.Ct.Crim.App.2011).

6. The appellant raises the following AOEs:
 1) The guilty findings for all child pornography offenses are legally insufficient because the Government failed to introduce evidence that 18 U.S.C. § 2252A existed at the time of the appellant's offenses;
 2) The specification alleging an attempt to entice a minor to engage in illegal sexual activity fails to state an offense by not expressly alleging an underlying state statute criminalizing the activity;
 3) The military judge erred when he admitted over defense objection evidence of uncharged misconduct from the appellant's statements to Naval Criminal Investigative Service;
 4) The military judge erred where he admitted over defense objection evidence of uncharged misconduct where the appellant, while chatting online with adults, discusses committing sexual acts with minors;
 5) The trial counsel made an unduly inflammatory sentencing argument;
 6) The guilty finding for the offense of attempt to entice a minor to engage in illegal sexual activity is factually insufficient;
 7) The military judge erred by refusing to instruct the members on the defense of voluntary abandonment; and
 8) The military judge erred in admitting derivative evidence from an illegal pretextual telephone call.
 AOEs 6–8 are raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982).

At trial, the appellant testified that he never intended to actually meet Ms. CG.

Several years later, in 2009, the appellant met and married an active duty Army officer, Captain (CPT) SG. In December of 2009, CPT SG discovered evidence of child pornography on the appellant's laptop computer and eventually turned his laptop over to local law enforcement authorities, who in turn delivered it to the Naval Criminal Investigative Service (NCIS). NCIS initiated an investigation and arranged for CPT SG to conduct a pretextual telephone call to the appellant under the guise of reconciling their marriage, but with the actual purpose of eliciting incriminating statements regarding the contents of his laptop. During the call, the appellant admitted to downloading child pornography to his laptop. NCIS submitted the laptop turned over by the appellant's wife, along with additional computer media seized from the appellant's residence, for forensic examination. This examination revealed images of child pornography and archived chats referencing sexual acts with minors and sexual preferences for children.

During interrogation by NCIS, the appellant admitted to downloading child pornography and having sexually explicit conversations online with minors. He also described a long-standing sexual interest in children and related fantasies, but denied ever actually committing a sexual act with a child.

Following NCIS's investigation, the Government charged the appellant with transmitting obscene material and attempting to entice a minor to engage in illegal sexual activity for his online communications with Ms. CG.[7] The remaining offenses alleged wrongfully receiving and possessing images of child pornography.[8] Additional facts necessary to resolve the assigned errors are included herein.

## II. Legal Sufficiency of the Child Pornography Offenses

The appellant argues that his convictions for receipt and possession of child pornography in violation of 18 U.S.C. § 2252A are legally insufficient because the Government failed to introduce evidence that this federal statute existed at the time of the appellant's offenses. At trial, the military judge instructed the panel that an element for each of these offenses was that 18 U.S.C. § 2252A existed at the time of the appellant's conduct. Record at 469–71. After the members closed for deliberations, the president asked "Title 18 clarification, was it in existence?" *Id.* at 504–05; Appellate Exhibit LII. The Government asked that the military judge take judicial notice of the statute, but he declined to do so. Instead, citing RULE FOR COURTS-MARTIAL 921(b), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.) and over defense objection, the military judge handed the president a copy of the statute and instructed the panel that they must decide based on the evidence whether the Government had proven this element beyond a reasonable doubt. In addition to legal insufficiency, the appellant also argues that the military judge erred by providing a copy of the federal statute to the members in response to their question.

As a predicate matter, we first must address whether the existence of a federal statute is indeed an element of a crime or offense not capital under clause (3) of Article 134, UCMJ. In drafting such specifications, each element of the federal crime must be alleged either expressly or by necessary implication. *United States v. Pierce,* 70 M.J. 391, 394 (C.A.A.F.2011). Further, the federal statute itself should be identified. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.), Part IV, ¶ 60c(6)(b).

However, as pointed out by the Government during oral argument, nowhere in the Article does the Manual list the mere existence of the federal statute as an element of a clause (3) offense. Even though it may be a long-standing practice for military judges to instruct panels otherwise, no such requirement is included in the United States Code, the Federal Rules of Criminal Proce-

---

7. *See* Specifications 1 and 2 of the Charge. These specifications allege violations of 18 U.S.C. §§ 1470 and 2422(b) respectively.

8. Specifications 3 through 7 allege violations of 18 U.S.C. § 2252A.

dure, or the Manual for Courts–Martial.[9] As "[d]eterminations as to what constitutes a federal crime, and the delineations of the elements of such criminal offenses—including those found in the UCMJ—are entrusted to Congress", *United States v. Jones*, 68 M.J. 465, 471 (C.A.A.F.2010) (citing *Liparota v. United States*, 471 U.S. 419, 424, 105 S.Ct. 2084, 85 L.Ed.2d 434 (1985) and 1 Charles E. Torcia, *Wharton's Criminal Law* § 10, at 37–38 (15th ed. 1993)), we therefore conclude that proof of the mere existence of the federal statute is not an element of an Article 134, UCMJ, clause (3) offense.

■ The lack of any such element makes resolving this assignment of error straightforward. Regardless of whether the military judge erred, we find no deficiency in the Government's proof since the member's question and the military judge's response did not pertain to any element of the crime. Our *de novo* review of the record[10] convinces us that "considering the evidence in the light most favorable to the prosecution, a reasonable fact finder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).

But even if we were to find error, we are convinced any such error was harmless.[11] Although the military judge may have thought otherwise, he could have taken judicial notice of the statute, even over defense objection, and instructed the members accordingly. MILITARY RULE OF EVIDENCE 201A, MANUAL FOR COURTS-MARTIAL, UNITED STATES (2008 ed.); *see also United States v. Moore*, 55 M.J. 772, 781 (N.M.Ct.Crim.App. 2001) (recognizing that MIL. R. EVID. 201A authorizes judicial notice of domestic law

even where the domestic law is a fact that is of consequence to the action). Additionally, there was no dispute at trial that this federal statute existed at the time of the offenses. The defense raised a perfunctory objection solely because the Government had rested its case. Last, the military judge's solution inured to the appellant's benefit. By refusing to take judicial notice, he left the issue of whether the statute existed for the panel to decide. Had he taken judicial notice of the statute, he would have instructed them that they must accept as true the fact that the statute existed at the time of the offenses.[12] Therefore, we conclude that any error by the military judge in providing a copy of the statute to the panel was harmless.

### III. Whether Specification 2 of the Charge Properly States an Offense

For the first time on appeal, the appellant contends that Specification 2 of the Charge fails to state an offense because it does not allege an underlying state statute making the sexual activity a crime. This specification reads in pertinent part:

> In that [the appellant] did, at or near Camp Pendleton, California, on divers occasions ... wrongfully and knowingly through use of the internet attempt to persuade, induce, entice or coerce "Amy," someone he thought was a female 13 years of age, who was, in fact, [CG], a pervertedjustice.com undercover profiler, to meet with [the appellant] for the purpose of engaging in sexual activity with [the appellant], in violation of 18 U.S.C. § 2422(b), which conduct under the circumstances was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

---

9. The Benchbook does not list such a requirement either. *See* Military Judges' Benchbook, Dept. of the Army Pamphlet 27–9 at ¶ 3–60–2B (1 Jan 2010).

10. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F.2002).

11. In evaluating harmlessness for nonconstitutional error, we apply the standard of whether the error "had a substantial influence on the member' verdict in the context of the entire

case." *United States v. Yammine*, 69 M.J. 70, 78 (C.A.A.F.2010) (internal quotation marks and citation omitted).

12. *See* MIL. R. EVID. 201A(a) (holding procedural requirements of MIL. R. EVID. 201(g) do not apply where military judge takes judicial notice of domestic law that is a fact of consequence to the determination of the action); *Moore*, 55 M.J. at 781.

Whether a specification states an offense is a matter we review *de novo*. *United States v. Crafter*, 64 M.J. 209, 211 (C.A.A.F.2006). Clause (3) offenses under Article 134, UCMJ, "involve noncapital crimes or offenses which violate Federal law." *Pierce*, 70 M.J. at 394 (quoting MCM, Part IV, ¶ 60(c)(1)). "When alleging a clause (3) violation, each element of the federal ... statute must be alleged expressly or by necessary implication." *Id.* (quoting MCM, Part IV, ¶ 60c(6)(b)). Thus, we must determine whether a legally sufficient specification alleging a violation of 18 U.S.C. § 2242(b) requires the pleading of an underlying state or federal statute rendering the sexual activity illegal.

We begin our inquiry by examining the elements of 18 U.S.C. § 2422(b) which are relevant to this case:

1. that the appellant used a facility of interstate commerce;

2. to knowingly persuade, induce, entice or coerce;

3. a person under the age of 18 years;

4. to engage in sexual activity for which any person can be charged with a criminal offense, or attempted to do so.[13]

*United States v. Berk*, 652 F.3d 132, 138 (1st Cir.2011) *cert. denied*, ── U.S. ──, 132 S.Ct. 1650, 182 L.Ed.2d 245 (2012); *United States v. Thomas*, 410 F.3d 1235, 1245 (10th Cir.2005).

█ Next, we note no authority for the appellant's proposition that a legally sufficient pleading under 18 U.S.C. § 2422(b) must identify an underlying state or federal statute—a lack of authority recently noted by the First Circuit Court of Appeals.[14] But assuming without deciding that this specification must contain such specificity and is therefore defective, we must turn to the question of whether this defect constitutes plain error. *United States v. Humphries*, 71 M.J. 209, 213 (C.A.A.F.2012). A defective

pleading first challenged on appeal does not merit relief absent material prejudice to a substantial right of the appellant. *Id.* at 215; *United States v. Ballan*, 71 M.J. 28, 30 (C.A.A.F.2012). The right at stake is the appellant's constitutional right to notice under the Fifth and Sixth Amendments. *United States v. Girouard*, 70 M.J. 5, 10 (C.A.A.F. 2011).

█ When we examine the issue of prejudice in this context, we are viewing whether "notice of the missing element is somewhere extant in the trial record, or whether the element is 'essentially uncontroverted.'" *Humphries*, 71 M.J. at 215–16 (quoting *United States v. Cotton*, 535 U.S. 625, 633, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002)). The subject of an underlying state statute was never raised before trial. Nor did the appellant object to the specification before trial or request a bill of particulars. Near the close of the Government's case in chief, the military judge noted the requirement that the enticed activity, namely sexual intercourse, violate state law and indicated that he would take judicial notice of the relevant California statute. Record at 425; AE IL. The appellant raised no objection to judicial notice of the California statute or when the military judge later instructed the panel accordingly. Furthermore, the issue of whether California law prohibited sexual intercourse between an adult and a 13–year–old child and the corresponding statute was uncontroverted at trial. The only controversy the appellant raised at trial was whether his communications with Ms. CG amounted to attempted enticement of a minor or merely fantasy banter. Record at 435–36, 496–97. The fact that the Government did not specifically identify the statute until near the end of its case created no surprise or confusion for the appellant. Consequently, the omission of any state statute in this specification did not prejudice the

---

**13.** Although not raised as error, we note that the military judge properly instructed the members on these elements with additional tailoring based on the evidence admitted during trial. Record at 466–68.

**14.** *See Berk*, 652 F.3d at 138 (recognizing that no federal circuit has addressed the issue), *but see*

*United States v. Doyle*, 2007 WL 542138, at *10– 12, 2007 U.S. Dist. LEXIS 11429, at *32–38 (E.D.Wis. Feb. 16, 2007) (recognizing that a 2422(b) indictment that merely tracks the language of the statute without identifying an underlying statute may be insufficient).

appellant's constitutional right to notice. *Humphries,* 71 M.J. at 217.[15]

## IV. MIL. R. EVID. 404(b)

### A. *Admission of Appellant's NCIS Statements*

■ The appellant argues that the military judge erred in permitting the Government to introduce inadmissible uncharged misconduct from his various statements to NCIS.[16]

Under MIL. R. EVID. 404(b), evidence of other crimes, wrongs, or acts may be admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Using the three-part test articulated in *United States v. Reynolds,*[17] we review the military judge's decision to admit these initial portions of the appellant's NCIS statements for an abuse of discretion. *United States v. Harrow,* 65 M.J. 190, 201 (C.A.A.F.2007) (citation omitted). Although we grant a military judge wide discretion in evaluating the prejudicial impact of such evidence, we must give "military judges less deference if they fail to articulate their balancing analysis on the record, and no deference if they fail to conduct the Rule 403 balancing." *United States v. Manns,* 54 M.J. 164, 166 (C.A.A.F.2000) (citation omitted).

In this case, the military judge found that the appellant's statements acknowledging

sexual conversations with minors online were probative of the appellant's motive, intent, and absence of mistake both for his communications with Ms. CG and for possessing and receiving images of child pornography. AE XL. Further, he ruled that "the danger of unfair prejudice [was] substantially outweighed by the probative nature of this evidence."[18] *Id.* Since he did not fully articulate his MIL. R. EVID. 403 balancing analysis on the record, we afford his decision less deference. Even so, we find no error in his admission of these statements.

Neither party disputes that the appellant made these admissions to NCIS; therefore we can quickly dispose of the first *Reynolds* requirement. As to the second requirement, we find this evidence highly probative of the appellant's intent and motive behind his conversations with Ms. CG, as they undeniably demonstrate a sexual interest in children. Since intent was the sole issue in dispute at trial,[19] this evidence was highly probative to show whether the appellant actually intended to entice Ms. CG to engage in illegal sexual activity as described in their online communications, or simply to engage in fantasy dialogue as posited by civilian defense counsel.[20]

This evidence was also probative of the appellant's intent and motive in receiving and possessing child pornography. Although the

---

**15.** Although we decline to accept the appellant's invitation to find plain error in this clause (3) specification, we do find that even absent an underlying state statute this specification as written contains all the essential elements of a clause (1) and (2) offense under Article 134, UCMJ.

**16.** Specifically, the appellant points to those portions where he acknowledges that he contacted four to five minors in chat rooms and discussed sexual acts with two 14– to 15–year–old females. Prosecution Exhibits 13 and 14. The appellant, through civilian defense counsel, objected to these portions at trial. The appellant now points to additional portions of these statements where he admitted to sharing images of child pornography online and stated that it was possible that he exposed his penis to minors via a webcam. PE 14. Civilian defense counsel did not raise any objection at trial to these latter portions. Record at 120–21; AE XXXI.

**17.** 29 M.J. 105, 109 (C.M.A.1989). This test requires that the following three requirements be met before other acts evidence can be admitted:

1. Does the evidence reasonably support a finding by the court members that the appellant committed prior crimes, wrongs or acts?
2. What fact of consequence is made more or less probable by the existence of this evidence?
3. Is the probative value substantially outweighed by the danger of unfair prejudice?

**18.** It appears that the military judge misspoke, as the standard under MIL. R. EVID. 403 requires exclusion only when the probative value is substantially outweighed by the danger of unfair prejudice.

**19.** At trial, the appellant testified that he never actually intended on meeting Ms. CG. Record at 435–36.

**20.** *Id.* at 497.

appellant did not testify about these offenses, civilian defense counsel raised the issue of mistake or accident during closing argument,[21] and the appellant now concedes these statements are relevant at a minimum to show absence of mistake.[22] We agree, as his online sexual discussions with minors during the same time frame as the charged offenses fairly rebut mere accident or mistake in possessing and receiving child pornography.

The only question concerns the prejudicial nature of these statements. The danger of unfair prejudice includes the general risk that members will use evidence of uncharged misconduct to infer that the appellant acted in character, and thus convict. *United States v. Staton*, 69 M.J. 228, 232 (C.A.A.F.2010). On one hand, this evidence is certainly prejudicial as the appellant admits to offenses related to sexual exploitation of children. But he did so only after being informed by NCIS that they already suspected him of similar crimes. In this context, these statements are highly probative of his mental state and motivation—both relevant to the specific intent required for the attempt to entice offense and the scienter element required for the remaining offenses.[23] Therefore, while there may be a degree of prejudice attaching to these acts, their probative value is high, and we agree with the military judge that the former did not substantially outweigh the latter.

 We now turn to those portions of the appellant's NCIS statements first challenged on appeal. Since the defense did not object at trial, we review for plain error. Mil. R. Evid. 103(d); *see also United States v. Sweeney*, 70 M.J. 296, 304 (C.A.A.F.2011). However, in applying *Reynolds*, we find no plain and obvious error with the admission of these statements.

As to the first *Reynolds* requirement, we have uncontroverted admissions from the appellant that these acts occurred. Addi-

tionally, his online profile and archived chats corroborate his trading images of child pornography. Prosecution Exhibit 8 at 4, 16, and 19. Aside from his statement that he "possibly" may have exposed himself online to a minor, there is also the simple fact that his online profile picture displays his genitalia. PE 8 at 4. Thus, the first *Reynolds* requirement was met by ample evidence.

Second, the appellant concedes that at a minimum, these statements are relevant to prove absence of mistake. Appellant's Brief of 27 Jan 2012 at 10. We agree with the appellant on this point. His statements are also highly probative of his intent and motive to commit the offenses charged. They indicate his sexual interest in children and his intent or desire to collect more images of child pornography and to actually entice a minor to engage in sexual activity.

As to the third *Reynolds* requirement, certainly in any case involving evidence of child sexual exploitation there is an inherent risk that such evidence will inflame the passions of the fact finder. Here, the Government had to prove specific intent and knowledge, issues that required proof that the appellant acted purposefully and with a desired end state. These admissions are highly probative of his intent and motive as his admitted sexual fantasies about children provide the impetus for his further sexual exploitation of children, either through seeking out and downloading child pornography, or by attempting to entice a child to engage in illegal sexual activity. *See United States v. Watkins*, 21 M.J. 224, 227 (C.M.A.1986) (other acts can show motive when they reveal an existing internal emotion and that same emotion existed at the time of the offenses). Most importantly, we note a lack of any other evidence of the appellant's actual intent at the time he chatted online with Ms. CG.[24]

---

21. *Id.* at 494–96.

22. Appellant's Brief of 27 Jan 2012 at 10.

23. Specifications 1 and 3–7 each require that the appellant acted knowingly, whether in transmitting obscene material or receiving or possessing images of child pornography.

24. *See United States v. Hays*, 62 M.J. 158, 164 (C.A.A.F.2005) (concluding that when intent is in issue, other acts may be the only way to determine state of mind).

Still, the appellant contends that any probative value was far outweighed by the prejudicial impact because these admissions constituted evidence of crimes greater than those for which the appellant was charged. We disagree. The charged offenses carried a maximum confinement penalty of 60 years. These other acts that the appellant admitted to carried a similar range of penalties. We also note that, unlike other more attenuated forms of MIL. R. EVID. 404(b) evidence, these "other acts" are the appellant's own statements describing his use of the same online medium during the same time frame as the charged offenses. Thus, these other acts share temporal proximity to the charged offenses and while they may carry some degree of prejudice based on their illicit nature and content, they are highly probative of material issues in this case. We therefore conclude that the military judge did not err in admitting the appellant's NCIS statements in their entirety before the members.

### B. Online Chats with Adults Discussing Sexual Acts with Minors

■ The appellant next argues that the chats offered into evidence by the Government (PE 15–22) containing references to the appellant's sexual interest in children, his past sexual acts with minors, and his expressed willingness to trade child pornography were all improperly admitted over defense objection under MIL. R. EVID. 404(b). At trial, the military judge ruled that these chats went to the "heart of the charges on the charge sheet, which is knowing possession of child pornography." Record at 357, 360–61.[25] We review the military judge's ruling admitting or excluding evidence for an abuse of discretion. *Staton*, 69 M.J. at 230. We will "overturn [that ruling] only if the judge's findings of fact are clearly erroneous or his decision is influenced by an erroneous view of the law." *United States v. Henry*, 53

M.J. 108, 110 (C.A.A.F.2000) (internal quotation marks and citations omitted).

In applying the *Reynolds* test, the content of the chats survives the first required finding. Forensic evidence offered at trial from the appellant's computer established that he engaged in these conversations. Further, both his admissions to NCIS and the testimony of his wife at trial also established that he used the same online profile name. PE 14 at 1; Record at 261. Next is the issue of logical relevance. These chats display the appellant's clear sexual interest in children[26] and desire to trade related images.[27] They are relevant to prove intent and motive for the charged offenses. *See United States v. Chambers*, 642 F.3d 588, 595 (7th Cir.2011) (holding chat transcripts between defendant and undercover police officers posing as minors where defendant boasted of past sexual intercourse with 14–year–old were relevant to show intent and motive toward charged offenses of attempted enticement of a minor and child pornography).

However, in balancing the prejudice of these chats against their probative value, we conclude that the military judge should have excluded under MIL. R. EVID. 403 those portions describing previous acts of child sexual abuse. Unlike the appellant's NCIS statements, these chats contain what could be considered as admissions of past acts of sodomy and rape of a child. In that regard, these acts far exceed the scope of culpability reflected in the offenses charged and certainly could inflame the passions of the members.[28] Their inclusion added little probative value beyond that already provided through the Government's forensic evidence, the appellant's admissions to NCIS, and the remaining portions of these chats.

■ Finding error, we must now determine whether this error resulted in material prejudice to the appellant's substantial rights. *United States v. Berry*, 61 M.J. 91,

---

25. The relevance offered by the Government was to show intent, motive and absence of mistake. Record at 357, 359.

26. PE 15, 20, and 21.

27. PE 16 and 19.

28. PE 15 at 2 (the appellant's online personality alleges oral sodomy and intercourse with 12–year–old female); PE 18 at 2 (the appellant's online personality alleges vaginal intercourse with a 9–year–old female); PE 20 at 1 (the appellant's online personality alleges oral sodomy with 14–year–old female cousin).

97 (C.A.A.F.2005). In making this *de novo* determination, we must review whether this error "had a substantial influence on the members' verdict in the context of the entire case." *Harrow*, 65 M.J. at 200 (citations omitted). Factors considered in this regard are: "(1) the strength of the government's case; (2) the strength of the defense case; (3) the materiality of the evidence in question; and (4) the quality of the evidence is question." *Id.* (citations omitted).

The Government's case against the appellant was undeniably strong.[29] In contrast, little was offered by the defense except for the testimony of the appellant, and that only pertained to the attempt to entice offense.[30] Although the improperly admitted portions of these chats were graphic in nature, some of the "shock value" was diminished by the appellant's self-described lurid sexual fantasies in his NCIS statements, the images of child pornography retrieved from his computers, the online search terms he used, and the remaining portions of these chats. In this context, we find the overall prejudice diminished. *See, e.g., United States v. Hays*, 62 M.J. 158, 164–65 (C.A.A.F.2005) (noting the prejudicial impact of offensive material reduced due to nature of child pornography offenses); *United States v. Acton*, 38 M.J. 330, 334 (C.M.A.1993) (concluding prejudicial impact of pornographic video lessened because same conduct already before the panel).

Last, we view the context of this evidence as it was presented to the members. First, the appellant himself described fantasies of committing sexual acts with children but denied ever having done so. PE 13 and 14. Second, the limiting instruction given by the military judge characterized this evidence as fantasy. Record at 482. Last, the trial counsel made no reference to these portions of the chats during closing argument, instead focusing on the portions that indicated a desire to trade images of child pornography. *Id.* at 491–93. We therefore conclude that this improperly admitted evidence "would not have provided any new ammunition" to the Government's case and any resulting error from its admission is likely harmless. *United States v. Yammine*, 69 M.J. 70, 78 (C.A.A.F.2010) (internal quotation marks and citation omitted).

The appellant alternatively claims that even if these chats were not substantially prejudicial for findings, their use by the members during sentencing "prejudiced [the appellant's] right to a fair sentencing hearing." Appellant's Brief at 18. We disagree. Evidence of uncharged misconduct properly admitted at trial can also be considered in sentencing. *See* R.C.M. 1001(f)(2)(A) (providing that the sentencing authority may consider evidence of other offenses or acts of misconduct properly introduced on the merits even if introduced for limited purpose); *see also United States v. Figura*, 44 M.J. 308, 310 (C.A.A.F.1996) (recognizing that all evidence admitted during merits phase of a contested trial can be considered in sentencing). MIL. R. EVID. 403 is the only limitation. *United States v. Stephens*, 67 M.J. 233, 235 (C.A.A.F.2009). As explained *supra*, these chats were properly admitted at trial under MIL. R. EVID. 404(b) except for the portions noted above. For those portions admitted in error, we find no material prejudice to the appellant's right to a fair sentencing hearing for the same reasons we found no material prejudice to his right to a fair trial. Additionally, we note that the military judge properly instructed the panel to sentence the appellant only for those offenses of which he stood convicted[31] and the trial counsel characterized these chats as "fantasy" when arguing for an appropriate punishment.[32]

---

29. Besides the appellant's admissions to NCIS and the testimony of the appellant's wife, the Government's computer forensic examination revealed the appellant's online profile personality, his chats with Ms. CG, and known images of child pornography.

30. The appellant testified only as to Specification 2, the attempt to entice a minor to engage in illegal sexual activity. He conceded that he chatted with Ms. CG but disavowed any actual intent of meeting her. Record at 435–36. When pressed by the trial counsel on details of the chats that suggested otherwise, the appellant was exceedingly evasive and vague in his answers.

31. Record at 538.

32. *Id.* at 546.

For these reasons, we conclude that the admission of this evidence did not materially prejudice a substantial right of the appellant. Accordingly, this assignment of error is without merit. Art. 59(a), UCMJ.

## V. Improper Sentencing Argument

The appellant next contends that the following comments by trial counsel during his sentencing argument were improper:

[W]hen you consider [the appellant's unsworn statement], as the judge just instructed you, give it its due weight. Take under consideration that it wasn't under oath. He is not sworn to testify to tell the truth. When you decide whether or not to believe the words that he stood here and told you this morning, think about what he sat [sic] here yesterday on the stand and testified to under oath. Remember that. When he sat here and lied, and he told you that, My chats with Littlebeangirl2 (sic) weren't for a sexual purpose. I had no sexual intent. Take that in consideration when weighing his credibility standing here unsworn.

. . . .

He told you he's been to bible studies ... He is familiar then with the quote, it would be better for millstone to be hung around your neck and cast into the sea than to cause one of these little ones to stumble.

. . . .

[H]is favorite age to admire are 8 to 11 . . . . Does that sound like rehabilitative potential, or does that sound like his true colors?

Record at 545, 547.

Improper argument is a question of law we review *de novo*. *See, e.g., United States v. Pope*, 69 M.J. 328, 334 (C.A.A.F.2011). As the appellant lodged no objection at trial, we review for plain error. *United States v. Marsh*, 70 M.J. 101, 104 (C.A.A.F.2011).

Addressing his first contention that the trial counsel implicitly asked the members to draw an adverse inference from the appellant's unsworn statement, we do not find plain error. "Merely urging the court members to consider an unsworn statement for what it is falls within the boundary of fair prosecutorial comment." *United States v. Breese*, 11 M.J. 17, 24 (C.M.A.1981).

In this case, the trial counsel's comment raised two inferences: first, that the panel should give the statement less credibility since it was not under oath; and second, that they should afford it less credibility because of its inherent inconsistency with the appellant's testimony on the merits. During his instructions, the military judge advised the panel that they may consider an unsworn statement's "inherent probability or improbability, whether it is supported or contradicted by evidence in the case, as well as any other matter that may have a bearing upon its credibility." Record at 544.

The first inference is a fair comment as it closely tracked the applicable law and the instructions by the military judge. *Id.* at 543–44; *see Marsh*, 70 M.J. at 105. As to the second inference, urging the panel to afford the appellant's unsworn statement less weight because of its inconsistency with the appellant's earlier sworn testimony is also fair comment on the evidence. Most importantly, there is no evidence that the trial counsel urged the panel to draw an adverse inference simply because the appellant made an unsworn statement instead of a sworn statement. *Breese*, 11 M.J. at 23. Further, the military judge immediately followed his explanation of an unsworn statement with a mendacity instruction. He advised the panel that they may consider untruthful testimony of the appellant during findings as it may pertain to the appellant's rehabilitative potential, but may not use it as a basis to mete out additional punishment. Record at 544. We find no evidence in the record to indicate that the members did not follow this instruction. *Breese*, 11 M.J. at 23. Consequently, we find no error with the trial counsel's argument relating to the appellant's unsworn statement.

Turning to the second comment raised as error, the trial counsel's Biblical reference was improper. In his unsworn statement, the appellant referenced completing numerous courses and programs while in pretrial confinement, to include Bible classes for which he received a certificate. Although he did refer to Bible courses, we do not view

this limited reference as his attempt to inject religiosity or spirituality into the sentencing equation. *United States v. Green,* 64 M.J. 289, 293 (C.A.A.F.2007). This was not a plea for leniency based on a fervent religious belief or newfound spirituality. Consequently, it was improper and wholly unnecessary for trial counsel to respond with a Biblical passage suggesting harsh punishment for sins against children.

The last comment raised as error focuses on the appellant's online chats with other adults describing their sexual preferences for children. The appellant argues that the trial counsel likened these chats to the appellant's "true character" and in essence argued this evidence as propensity to commit further crimes against children. Appellant's Brief at 34–35. We disagree.

We first note that the trial counsel did not allude to those portions of the online chats we found erroneously admitted under MIL. R. EVID. 404(b). Next, we are not persuaded by the appellant's implied argument that evidence admitted during trial for a limited purpose somehow retains that same limitation during sentencing. As explained *infra,* evidence properly admitted during trial is relevant for consideration and argument during sentencing. R.C.M. 1001(f)(2)(A). Furthermore, virtually all evidence admitted during sentencing focused on the appellant's rehabilitative potential. How these online chats and their content reflected upon the appellant's rehabilitative potential was appropriate for comment. Last, we disagree with the appellant's description of the context to trial counsel's comment. The trial counsel was properly rebutting the appellant's self-described steps at rehabilitation and commenting on his lack of rehabilitative potential.

Although we find error with the trial counsel's use of this Biblical passage, even if it were plain and obvious, we do not find that this error resulted in material prejudice to a substantial right of the appellant. *United States v. Powell,* 49 M.J. 460, 464–65 (C.A.A.F.1998). The trial counsel made this brief comment in response to the appellant's unsworn statement. From the overall context of trial counsel's argument, this comment was not an exhortation to harshly punish the appellant. Rather, the trial counsel's implied message was that the appellant's recent efforts at self-betterment fell woefully short of demonstrating any true rehabilitative potential. We also note that the defense did not view this comment as warranting an objection. While this comment was improper, we do not consider the overall message conveyed as inflaming the passions or prejudices of the panel. *United States v. Barrazamartinez,* 58 M.J. 173, 176 (C.A.A.F.2003). We also find no evidence that the members improperly considered this comment. In light of the overall context to this comment and the serious nature of these offenses, we are confident that the members would have imposed the same sentence absent this comment. *United States v. Schroder,* 65 M.J. 49, 58 (C.A.A.F.2007).

## VI. Remaining Assignments of Error

The appellant next argues that his conviction for attempted enticement of a minor was factually insufficient because his conversations with Ms. CG were insufficient to establish a substantial step toward completion of the crime. To the contrary, we conclude that his actions in de-conflicting his own work schedule, discerning when her mother would be absent, ensuring that she was not actually a police officer, discussing specific sexual activity, and asking her what items she might like for him to bring went beyond mere "hot air" and sufficiently demonstrated that the appellant took a substantial step toward enticement of a minor. *United States v. Winckelmann,* 70 M.J. 403, 407–08 (C.A.A.F.2011); *see also United States v. Chambers,* 642 F.3d at 594 (recognizing that Federal Circuits view discussions as a "substantial step" when they involve arrangements for meetings, discussion of sexual acts to be performed during meeting, or "grooming" whereby the defendant exposes the child to sexual material in an effort to lower the child's inhibitions toward later sexual activity). Based on our own *de novo* review of the record of trial, and making allowances for not having personally observed the witnesses, we are convinced of the appellant's guilt beyond a reasonable doubt.

*United States v. Reed,* 54 M.J. 37, 41 (C.A.A.F.2000).

We find the remaining assignments of error to be without merit.

### VII. Conclusion

Accordingly, the findings of guilty and the sentence are affirmed.

Chief Judge PERLAK and Senior Judge PAYTON–O'BRIEN concur.