*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps Court of Criminal Appeals

Before
CRISFIELD, TANG, and LAWRENCE
Appellate Military Judges

_____

**UNITED STATES**
Appellee

**v.**

**Matthew P. HOFFMANN**
Corporal (E-4), U.S. Marine Corps
Appellant

**No. 201400067**

Argued: 21 February 2018[1]—Decided: 10 June 2020

Appeal from the United States Navy-Marine Corps Trial Judiciary upon further review and following remand from the United States Court of Appeals for the Armed Forces.

Military Judge:
Keith A. Parrella

Sentence adjudged 18 October 2016 by a general court-martial convened at Marine Corps Base Camp Lejeune, North Carolina, consisting of officer members. Sentence approved by the convening authority: reduction to E-1, forfeiture of all pay and allowances, confinement for 7 years, and a dishonorable discharge.

---

[1] This Court heard oral argument in this case at The George Washington University Law School, Washington, District of Columbia, as part of the Court's Project Outreach.

For Appellant:
*Commander Donald R. Ostrom, JAGC, USN (argued)*
*Major Thomas Fricton, USMC*

For Appellee:
*Captain Brian L. Farrell, USMC (argued)*
*Mr. Brian Keller, Esq.*
*Lieutenant Megan Marinos, JAGC, USN*
*Captain Sean M. Monks, USMC*
*Lieutenant Kimberly Rios, JAGC, USN*

Senior Judge TANG delivered the opinion of the Court, in which Chief Judge CRISFIELD and Judge LAWRENCE joined.

———————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

———————————

TANG, Senior Judge:

A panel of officer members sitting as a general court-martial convicted Appellant, contrary to his pleas, of indecent liberties with a child in violation of Article 120, Uniform Code Military Justice [UCMJ], 10 U.S.C. § 920 (2007) and a novel specification alleging attempted child enticement under Article 134, UCMJ, 10 U.S.C. § 934 (2007).[2] Although the members sentenced Appellant to 10 years' confinement, the convening authority approved only seven years' confinement so as not to exceed the sentence awarded in Appellant's first trial.

This case is before us for a third time. On 23 August 2013, in Appellant's first trial, he was convicted of offenses involving minor child "Ryan" and possession of child pornography.[3] This Court issued its opinion on that court-martial, *Hoffmann I,* in 2014.[4] On 18 February 2016, in *Hoffmann II,* our

---

[2] The members acquitted Appellant of attempted sodomy of a child.

[3] He was acquitted of similar offenses involving "Alex" and "Pete." All names are pseudonyms.

[4] *United States v. Hoffmann*, 74 M.J. 542 (N-M. Ct. Crim. App. 2014).

superior court set aside the findings and sentence, dismissed the child pornography charges with prejudice and authorized a rehearing on the three remaining charges involving Ryan.[5]

Following Appellant's rehearing—in which he was convicted of two of the charges involving Ryan—this Court issued an opinion, *Hoffmann III*,[6] addressing Appellant's original six assignments of error [AOEs]:[7]

(1) The military judge abused his discretion by admitting propensity evidence under Military Rule of Evidence [M.R.E.] 414;[8]

(2) The military judge erred when he failed to instruct the members on the Government's burden to prove by a preponderance of the evidence that the uncharged offenses occurred;

(3) The military judge erred when he did not extend his ruling that Colonel (Col) W was disqualified from providing input as staff judge advocate on the Article 34, UCMJ, letter to further disqualify him from other areas of pretrial advice;

(4) The military judge should have recused himself;

(5) Appellant's sentence is inappropriately severe and highly disparate from a closely related case;[9] and

(6) There is error requiring corrective action in Appellant's Report of Results of Trial due to an incorrect Defense Incident-Based Reporting System (DIBRS) code relating to the Specification of the Additional Charge.[10]

---

[5] *United States v. Hoffmann*, 75 M.J. 120 (C.A.A.F. 2016).

[6] *United States v. Hoffmann,* No. 201400067, 2018 CCA LEXIS 326 (N-M. Ct. Crim. App. Jul. 9, 2018) (unpub. op.).

[7] The AOEs have been renumbered for ease of discussion. Oral argument was heard by that earlier panel of this Court on renumbered AOEs 1, 3, and 4. AOE 2 was a supplemental AOE filed prior to oral argument.

[8] *Manual for Courts-Martia*l, United States [*MCM*] (2012 ed.).

[9] Raised pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982). Because Appellant had already been released from confinement by the time he filed his original brief with these AOEs, he only sought disapproval of the punitive discharge.

[10] Pursuant to this Court's decision in *United States v. Baratta*, 77 M.J. 691, 695 (N-M. Ct. Crim. App. 2018), in which we found we lack jurisdiction to correct DIBRS codes in the report of results of trial, we summarily reject Appellant's final AOE as the Report of Results of Trial in this case accurately reflects the findings and sentence. "[DIBRS codes] are neither findings nor parts of a sentence, thus we do not

After this Court issued its opinion, Appellant moved the Court to reconsider in light of *United States v. Guardado,*[11] raising an AOE not previously briefed. The Court specified briefing on the following issues:

(7) Whether the Specification of the Additional Charge, alleging a novel violation of Article 134, was preempted by Article 120(j), UCMJ, 10 U.S.C. § 920(j) (2006), or was otherwise impermissible in light of the Presidentially-defined Article 134 offenses;

(8) Whether the military judge properly instructed the members on the Specification of the Additional Charge by failing to allow a defense of mistake of fact as to age and failing to require the Government to prove Appellant intended to commit illegal sexual activity with Ryan; and

(9) Whether the military judge erred by incorporating the maximum punishment from 18 U.S.C. § 2422(b) for the Specification of the Additional Charge.

In his brief answering the Court's specified issues, Appellant raised a supplemental AOE:

(10) Whether the specifications constituted an unreasonable multiplication of charges.

This Court then specified two additional issues for briefing:

(11) Whether the military judge committed materially prejudicial error by failing to instruct the members that the attempt offense alleged in the Specification of the Additional Charge requires proof of a substantial step;[12] and

(12) Whether the Specification of the Additional Charge, as a novel Article 134, UCMJ, offense, contains "words of criminality" sufficient to state an offense.[13]

After granting reconsideration, the Court of Appeals for the Armed Forces [CAAF] decided two cases, *United States v. Davis*[14] and *United States v.*

---

have the authority to act upon them." *Id.* at 695 (citing Article 66(c), UCMJ); *see also United States v. Clifton*, 35 M.J. 79 (C.M.A. 1992).

[11] 77 M.J. 90 (C.A.A.F. 2017).

[12] *See United States v. Schell*, 72 M.J. 339 (C.A.A.F. 2013).

[13] *See United States v. Vaughan,* 58 M.J. 29, 35 (C.A.A.F. 2003) (citing *United States v. Davis,* 26 M.J. 445, 447-48 (C.M.A. 1988)); *see also United States v. Henderson,* 32 M.J. 941 (N-M. Ct. Crim. App. 1991).

[14] 79 M.J. 329 (C.A.A.F. 2020).

*Avery,*[15] that are dispositive of many of these issues. We find any claim of instructional error in relation to the Specification of the Additional Charge was waived, and we decline to grant relief. We remain convinced—consistent with this Court's prior opinion in *Hoffmann III*—that AOEs 1-6 lack merit, and we decline to grant relief.

## I. BACKGROUND

In April 2011, a man in a silver sport utility vehicle [SUV] with a yellow New York license plate drove past Ryan, a 13-year-old boy, several times while Ryan was walking home from school in Jacksonville, North Carolina, the city immediately adjacent to Marine Corps Base Camp Lejeune [Camp Lejeune]. On the third pass, the man pulled up and asked Ryan if he wanted a "quickie."[16] Ryan declined, and the man asked if Ryan knew what a "quickie" was. Ryan said "no," and the man drove around the block again. The man drove up to Ryan a fourth time and asked, "Are you sure," and, "You'll like it."[17] Ryan again declined and ran home. He immediately reported the incident and provided a description of the vehicle to the local Jacksonville Police Department. Police were unable to locate the SUV driver at that time.

In September 2011, a man in a light-colored SUV slowly drove past Alex, a 13-year-old boy, while he was walking home from school aboard Camp Lejeune. On the first two passes, Alex noticed the man was wearing a desert camouflage uniform and making a gesture with his hand that Alex took to indicate fellatio. The third time the man drove by, he made the same gesture and asked Alex if he wanted to go for a ride. Alex declined, and the man drove away.

Also in about September 2011, a man in a silver SUV drove past Pete, a 10-year-old boy, while he was walking home from school aboard Camp Lejeune. Pete noticed the man drive by making a similar indecent gesture to indicate fellatio. Pete noticed the SUV had a yellow license plate and a spare wheel on the back, and the male driver was wearing a green military undershirt.

In November 2011, Alex saw the SUV that had approached him in September in the same vicinity of Camp Lejeune while he was walking home

---

[15] No. 19-0259, 2020 CAAF LEXIS 151 (C.A.A.F. Feb. 27, 2020).

[16] Record at 423-26.

[17] *Id.*

from school. He took a picture of it and immediately called his mother, who promptly drove to meet him. While returning home, Alex and his mother passed the SUV and began following it. A high speed chase ensued, but Alex's mother was unable to keep up with the SUV. She noticed the make and model of the SUV in addition to the hard case on the rear-mounted spare tire and yellow New York license plate.[18]

Pete's mother observed the on-base car chase, wrote down the SUV's license plate number, and provided it to Alex's mother.[19] Alex's mother called her husband and gave him a description of the car and the license plate number. He was working on Camp Lejeune, and soon thereafter he located the SUV, followed it to a work site, and notified base police. Minutes later, security personnel arrived, identified the vehicle as belonging to Appellant, entered Appellant's workplace, and took Appellant into custody.

While the Naval Criminal Investigative Service [NCIS] was investigating the September and November on-base incidents involving Alex and Pete, they notified local police and learned of the April off-base incident involving Ryan. Now having a suspect, the Jacksonville Police Department conducted a photographic line-up with Ryan, who identified Appellant with "95 percent certainty" as the man driving the SUV who enticed him.[20]

## II. DISCUSSION

### A. Legal Challenges to the Specification of the Additional Charge

In this case, the Government intended to charge Appellant with an offense paralleling the federal child enticement statute under 18 U.S.C. § 2422(b). That statute reads, in pertinent part:

> Whoever, using . . . any facility or means of interstate . . . commerce, . . . knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, . . . shall be fined under this title and imprisoned not less than 10 years or for life.

---

[18] *Id.* at 318.

[19] The license plate number recorded by Pete's mother matched Appellant's plate number, with the exception of one letter. Record at 361-62.

[20] Record at 390, 441; Prosecution Exhibit 4, 5.

The Government incorporated some but not all of the elements of that statute in a novel Article 134 Clause 1 and 2 offense, which originally read:[21]

> In that [Appellant] . . . did . . . knowingly attempt to persuade, induce, and entice [Ryan], an individual who had not attained the *age of 18 years*, to engage in sexual activity, which conduct was of a nature to bring discredit upon the armed forces and prejudicial to good order and discipline in the armed forces.[22]

During Appellant's first trial, the members acquitted him of the Clause 1 language alleging his conduct was prejudicial to good order and discipline. During his rehearing, Appellant faced only a Clause 2, service-discrediting offense. We analyze the propriety of this offense under Clause 2 only. On its face, the specification tracks the language of 18 U.S.C. § 2422(b), except it omits the federal interstate commerce jurisdictional nexus and the requirement that Appellant intended to entice the minor (under 18 years) to engage in prostitution or *criminal* sexual activity.

This novel specification, and the way it was instructed upon and treated at trial, has given rise to many legal challenges.

### 1. Preemption

Several different provisions and doctrines govern the propriety of charging offenses under Article 134, UCMJ. None operates to preclude the specification alleged in this case.

First, as the *Manual for Courts-Martial* [*Manual*] explains under Part IV, paragraph 60.c.(5)(a):

> The preemption doctrine prohibits application of Article 134 to conduct covered by Articles 80 through 132. For example, larceny is covered in Article 121, and if an element of that offense is lacking—for example, intent—there can be no larceny or larceny-type offense, either under Article 121 or, because of preemption, under Article 134. Article 134 cannot be used to create a new kind of larceny offense, one without the required

---

[21] As Appellant's acts were not committed using a facility of interstate commerce, the Government could not charge the federal statute as an Article 134, Clause 3 offense.

[22] Charge Sheet (emphasis added).

intent, where Congress has already set the minimum require-
ments for such an offense in Article 121.

Next, the CAAF has interpreted the *Manual* to limit use of novel Article
134 offenses to charge offenses that are already Presidentially enumerated.
The *Manual* states, "If conduct by an accused does not fall under any of the
enumerated Article 134 offenses (paragraphs 61 through 113 of this Part), a
specification not listed in this Manual may be used to allege the offense."[23] In
*United States v. Guardado,*[24] the CAAF held that "if an offense is 'already
listed *inside* [Article 134's] framework,' it may not be charged as a 'novel'
general disorder offense."[25] To allege an already listed offense as a novel
offense violates not only the President's limitation in paragraph 60.c.(6)(c)—
now paragraph 60.c.(c)(a) in the 2019 *Manual*—but such action may also
raise due process concerns where such a charging action "delet[es] a vital
element" and effectively reduces the Government's burden of proof.[26]

Although the doctrine of preemption limits the use of novel Article 134,
UCMJ, offenses to charge behavior not already covered by other UCMJ arti-
cles, it is expressly permissible to allege federal statutes as Article 134,
Clause 3 offenses, so long as all elements of the federal statute are met. In
addition, it is permissible to allege what would otherwise constitute federal
offenses under Article 134, Clause 1 or 2, even if the offense does not meet all
of the elements of the federal statute.[27]

---

[23] *MCM*, Part IV, ¶ 60.c.(6)(c) (2008 ed.). The 2008 *Manual* applies to Appellant's
substantive offenses based on the date of the offenses. Appellant was arraigned after
the 2012 *Manual* was issued; that version of the *Manual* covered trial procedure.
This provision appears identically in both the 2008 and 2012 *Manuals* under Part IV,
paragraph 60.c.(6)(c), and it was nearly identically replicated in the 2016 and 2019
*Manuals,* as part of paragraph 60.c.(6)(a).

[24] 77 M.J. 90 (C.A.A.F. 2017).

[25] *Id.* at 95 (emphasis and alteration in original) (quoting *United States v. Reese,*
76 M.J. 297, 302 (C.A.A.F. 2017)) (both cases analyzing the language in the 2012
*MCM*, under paragraph 60.c.(6)(c)).

[26] *Id.* at 96.

[27] *United States v. Long,* 6 C.M.R. 60, 65 (C.M.A. 1952) ("We are of the opinion
that crimes and offenses not capital, as defined by Federal statutes, may be properly
tried as offenses under clause (3) of Article 134, but that if the facts do not prove
every element of the crime set out in the criminal statutes, yet meet the require-
ments of clause (1) or (2), they may be alleged, prosecuted and established under one
of those.")

Whether an offense is preempted is a question of statutory interpretation, which, as a question of law, we review de novo.[28] An Article 134 offense is preempted by an offense under Articles 80-132 if "(1) Congress intended to limit prosecution for . . . a particular area of misconduct to offenses defined in [those] specific articles of the Code, and (2) the offense charged is composed of a residuum of elements of a specific offense."[29] A court may not infer congressional intent unless Congress has made its intention clear "through direct legislative language or express legislative history that particular actions or facts are limited to the express language of an enumerated article."[30]

As an initial matter, we note that the CAAF has explicitly affirmed the use of the federal child enticement statute under Article 134, UCMJ, Clause 3. In *United States v. Wheeler*,[31] the CAAF held that Article 120b(c), UCMJ (2012),[32] did not preempt an Article 134, UCMJ, Clause 3 charge alleging a violation of 18 U.S.C. § 2422(b) for attempted enticement of a child as a crime or offense not capital. The court wrote that "enticement is not addressed expressly under Article 120b, UCMJ," nor is enticement otherwise covered under the other enumerated UCMJ Articles (80-132).[33] The court further wrote that there was no "legislative intent" indicating that Congress intended to occupy the field of all child sexual offenses when it legislated Article 120b.[34] Charging the federal statute did not serve to lessen the government's evidentiary burden by "circumventing [a] mens rea element or removing a specific vital element from an enumerated UCMJ offense."[35]

Appellant's case is distinguishable from *Wheeler* in that: (1) it alleges an Article 134, UCMJ, Clause 2, as opposed to Clause 3, offense; and (2) it does

---

[28] *See Avery,* 2020 CAAF LEXIS 151 at *3.

[29] *Id.* at *5 (alteration in original) (quoting *United States v. Curry*, 35 M.J. 359, 360-61 (C.M.A. 1992)).

[30] *Id.* (quoting *United States v. Anderson*, 68 M.J. 378, 387 (C.A.A.F. 2010)).

[31] 77 M.J. 289 (C.A.A.F. 2018) (holding the Government was not preempted by Article 120(b) from charging an 18 U.S.C. § 2422(b) offense under Article 134, Clause 3).

[32] Sexual abuse of a child by commission of a lewd act.

[33] *Id.* at 292.

[34] *Id.*

[35] *Id.* at 293.

not allege every element of 18 U.S.C. § 2422(b).[36] However, applying the logic of *Wheeler* (holding it is permissible to charge the federal child enticement statute) and *Long* (holding it is permissible to charge a novel Article 134 offense that omits some elements of a federal statute)*,* we find that it was permissible to charge an Article 134, UCMJ, Clause 2 offense that was modelled after 18 U.S.C. § 2422(b).[37] We believe *Wheeler* and *Long* are dispositive of this issue. However, because Appellant makes specific preemption challenges, we assess those below.

### a. Article 120(j), UCMJ

Appellant argues the specification fails to state an offense because it is preempted by Article 120(j), UCMJ, 10 U.S.C. § 920(j) (2007), indecent liberties with a child.

The elements of then-existing Article 120(j) were:

(1) that the Accused committed a certain act or communication; (2) that the act or communication was indecent; (3) that the Accused committed the act or communication in the physical presence of the victim; (4) that the Accused committed the act or communication with the intent to arouse, appeal to, or gratify the sexual desire of any person; and (5) that at the time, the alleged victim was under 16 years of age.[38]

Appellant argues this offense, and Article 134 indecent language, both "occupy the field of misconduct the government alleged."[39] However, any such argument relies upon framing the Specification of the Additional Charge as a communication-type offense. Appellant was convicted of two related offenses during his rehearing: taking indecent liberties in the presence of Ryan by communicating indecent language and attempting to persuade, induce, and entice him to sexual activity. This specification refers to the whole of Appel-

---

[36] The specification omits the interstate commerce nexus and the element that Appellant attempted to persuade, induce, entice, or coerce Ryan to "engage in prostitution or any sexual activity for which any person can be charged with a criminal offense." 18 U.S.C. § 2422(b).

[37] Whether this offense—alleging some but not all of the elements of 18 U.S.C. § 2422(b)—merits the same maximum punishment as that authorized under 18 U.S.C. § 2422(b) is a different question.

[38] *MCM*, pt. IV, ¶ 45.b.(10) (2008).

[39] Appellant's Brief on Specified Issues and Supplemental Assignments of Error of 9 Nov 2018 [Appellant's Brief on Specified Issues] at 10.

lant's actions of driving past Ryan multiple times, getting his attention, and attempting to convince Ryan to have sex with him. Framing this specification as an offense merely relating to communication misstates the specification. Accordingly, we reject the comparison to Article 120(j) and find the logic of *Wheeler* controlling. Article 120(j), UCMJ, does not preempt the novel Article 134, UCMJ, offense alleged in the Specification of the Additional Charge.

The central concern of the preemption doctrine is to prevent the Government from "tak[ing] an extant UCMJ offense and remov[ing] a vital element to create a diluted crime under Article 134, UCMJ."[40] There is no UCMJ offense that covers the act of attempted enticement of a child. Therefore, this offense is not preempted by Article 120(j), which—though it *could* be drafted to allege attempted enticement—does not expressly cover attempted enticement. Although the court in *Wheeler* interpreted a later version of Article 120b, UCMJ, we find the logic in *Wheeler* controlling. Although Article 120b(c) *could* be used to allege the offense Wheeler committed, that offense focused on indecent conduct or communication of indecent language. By contrast, 18 U.S.C. § 2422(b) was intended "to address those who lure children out to actually engage in illegal sexual activity."[41]

In *Avery,* the CAAF assessed whether Congress preempted Article 134, UCMJ, indecent language with a child when it enacted Article 120b, UCMJ (2012), sexual abuse of a child by committing lewd acts, which can include communicating indecent language. Although in *Avery,* CAAF was also interpreting a later version of Article 120b, UCMJ, as compared to a Presidentially enumerated Article 134, UCMJ, offense, we find the logic persuasive to Appellant's case. And in *Avery,* the nature of the two offenses being compared was substantially closer than the two offenses being compared here.

Appellant can point to no legislative history that suggests Congress intended to occupy the field as it relates to attempted enticement of a child when it legislated Article 120(j), UCMJ. Therefore, because the first part of the two-part preemption test is not met, we need not consider whether the specification alleges a residuum of the elements of Article 120(j), UCMJ.

b. Enumerated Article 134 offense of indecent language

Appellant further challenges the specification as impermissible under paragraph 60.c.(6)(c) of Part IV of the 2008 *Manual*, citing *United States v.*

---

[40] *Avery,* 2020 CAAF LEXIS 151 at *8.

[41] *Wheeler,* 77 M.J. at 292 (quoting *Schell,* 72 M.J. at 343-44).

*Guardado*.[42] In *Guardado,* the CAAF held that a novel Article 134 offense fails to state an offense when the President has already enumerated an Article 134 offense in Part IV of the *Manual* that covers the misconduct. Appellant argues that the Presidentially defined Article 134, UCMJ,[43] offense of indecent language covers the misconduct. The elements of Article 134, indecent language are: (1) that the accused orally or in writing communicated to another person certain language; (2) that such language was indecent; and (3) that, under the circumstances, the conduct of the accused was . . . of a nature to bring discredit upon the armed forces.[44] A fourth element may apply: that the person to whom the language was communicated was a child under the age of 16.[45]

Again, we note that Article 134, indecent language is not an apt comparison for the conduct alleged in the Specification of the Additional Charge. That specification referred not to the language Appellant used, but to the totality of Appellant's actions in which he attempted to persuade, induce, and entice Ryan to sexual activity. Because the specification captures the full nature of that attempted enticement offense, in line with 18 U.S.C. § 2422(b), we find that *Wheeler* controls. This offense was not preempted by Article 134, UCMJ, indecent language.

### 2. Instructional error during findings and sentencing

In *United States v. Schell,*[46] the CAAF held that when instructing on an attempted enticement offense charged under Article 134, UCMJ, the military judge must incorporate some of the elements that would have been present had an Article 80, UCMJ, offense been alleged. The court held that the elements of an Article 134, UCMJ, attempted enticement offense under 18 U.S.C. § 2422(b) include that: (1) the accused specifically intended to commit the substantive offense; and (2) that the accused "took a substantial step

---

[42] 77 M.J. 90 (C.A.A.F. 2017). As noted above, *Guardado* interpreted the identical provision in the 2012 *Manual.*

[43] *MCM*, United States, Part IV, ¶ 89, (2008 ed.).

[44] *Id.* at ¶ 89.b.

[45] *Id.* This additional element escalates the maximum punishment from a bad-conduct discharge, forfeiture of all pay and allowances, and six months' confinement to a dishonorable discharge, forfeiture of all pay and allowances, and confinement for two years.

[46] 72 M.J. 339 (C.A.A.F. 2013).

toward persuading, inducing, [or] enticing . . . a minor to engage in illegal sexual activity."[47]

In this case the military judge merely instructed upon the elements of Article 134, UCMJ: that Appellant committed an act; and that such act was of a nature to bring discredit upon the armed forces. The parties agree that the military judge plainly erred by failing to properly instruct the members on the elements of the offense, though they disagree whether this amounted to prejudice to Appellant.

However, since the parties submitted their briefs, the CAAF decided *United States v. Davis,*[48] in which the court held Davis affirmatively waived any error relating to instructions when Davis' trial defense counsel "affirmatively declined to object to the military judge's instructions and offered no additional instructions."[49] The court found affirmative waiver existed because the trial defense counsel was specifically asked—both before and after instructions were read—whether the counsel objected to instructions or desired additional instructions, and both times, the counsel stated he did not. In this case, the trial defense counsel was given several opportunities to object to the instructions or to request additional instructions. Although the trial defense counsel stated she did not concur with a specific aspect of the reasonable doubt instruction, the trial defense counsel did not object to the elements instructions for the Specification of the Additional Charge. Such affirmative waiver means there is "nothing left for us to correct on appeal."[50]

Appellant argues that the military judge erred in determining the maximum punishment for the offense to be 20 years by comparison to 18 U.S.C. § 2422(b). However, based on the record, it appears the 20-year figure actually came from Appellant's trial defense counsel and was based on the related offense of attempted sodomy with a child under the UCMJ.[51] In any event,

---

[47] *Id.* at 345-46 (citing *United States v. Winckelmann,* 70 M.J. 403, 407 (C.A.A.F. 2011)).

[48] 79 M.J. 329.

[49] *Id.* at 331.

[50] *Id.* Pursuant to *United States v. Chin,* 75 M.J. 220 (C.A.A.F. 2016), in order to conduct our review under Article 66(d)(1), we have discretion to review this issue in spite of Appellant's waiver. We decline to do so.

[51] During the first trial, the trial counsel argued the maximum punishment was confinement for life, the maximum term of confinement permitted under 18 U.S.C. § 2422(b), upon which the trial counsel stated the specification was modelled. So as to avoid a maximum confinement term of life, the civilian defense counsel argued the

although the Specification of the Additional Charge was not preempted by Article 120(j), UCMJ, or otherwise impermissible, the specification lacked several elements of 18 U.S.C. § 2422(b)—beyond the interstate commerce nexus—which rendered it different in quality from the offense upon which it was modelled. After Appellant requested this Court reconsider our prior opinion, our superior court decided *Davis,* and we find Appellant affirmatively waived any error resulting from the military judge's computation of the maximum punishment for this offense and the resulting maximum-punishment instruction to the members.[52] We find *Davis* also resolves the question presented in AOE 8, which itself relates to instructional error that may have arisen from the parties' treatment of the Specification of the Additional Charge.

### 3. Failure to state an offense

Appellant also argues the Specification of the Additional Charge fails to state an offense, asserting that "the charge does not describe criminal conduct because it is not illegal to entice someone between the ages of sixteen and eighteen to commit a sexual act."[53]

We review de novo whether a specification states an offense.[54] When raised for the first time on appeal, we review such claims for plain error.[55] Under this standard, Appellant must show "(1) there was error; (2) the error was plain or obvious; and (3) the error materially prejudiced a substantial right of the accused."[56]

---

novel specification was analogous to attempted sodomy with a child under the age of 16 but over the age of 12, carrying a maximum punishment of 20 years. *See* Original Record at 674-76. During the rehearing, the parties apparently believed this maximum punishment was based on 18 U.S.C. § 2422(b). *See* Record at 660.

[52] Considering *United States v. Chin,* 75 M.J. 220 (C.A.A.F. 2016), we decline to review this likely error. We note that Appellant was already released from confinement when this Court issued its opinion, and the remaining punishment consists of a dishonorable discharge, reduction to paygrade E-1, and total forfeitures.

[53] Appellant's Brief on Specified Issues at 4.

[54] *United States v. Gleason,* 78 M.J. 473, 475 (C.A.A.F. 2019) (citing *United States v. Crafter,* 64 M.J. 209, 211 (C.A.A.F. 2006)).

[55] *Id.* (citing *United States v. Tunstall,* 72 M.J. 191, 196 (C.A.A.F. 2013)).

[56] *United States v. Humphries*, 71 M.J. 209, 214 (C.A.A.F. 2012) (quoting *United States v. Girouard,* 70 M.J. 5, 11 (C.A.A.F. 2011)).

Under then-existing Article 120, it was an offense to commit sexual acts or sexual contact upon a child under the *age of 16 years*.[57] It was an offense to commit sexual acts or sexual contact with persons over the age of 16 only if certain additional circumstances were present to meet the elements of rape, sexual assault, abusive sexual contact, or wrongful sexual contact.[58] Sexual acts or sexual contact with persons between the ages of 16 and 18 years—without additional attendant criminal circumstances not present in this case—were not crimes. Thus, attempting to persuade a person "who had not attained the age of 18 years" to sexual activity—without additional circumstances—was not an act criminalized under the UCMJ. We must therefore ask whether such an act (as alleged in the specification) is properly punishable under Article 134, Clause 2 if the Government alleged this act to be of a nature to bring discredit upon the armed forces.

The specification only alleged that Ryan was under the age of 18 and did not allege that Appellant intended to entice him to a criminal sex act. At trial, it was shown that Ryan was 13 years old, meaning it would be an offense under the UCMJ to have any sexual contact with him. However, assessing the specification on its face and without referencing Ryan's actual age, we still find the specification states an offense. This specification was charged as an Article 134, Clause 2 offense. Could it be an Article 134, UCMJ, service-discrediting offense for a Service Member to drive around the local civilian community near a military base, shortly after school had been dismissed, and repeatedly solicit a minor to get into that Service Member's car to perform sex acts? We find that the answer to this question is resoundingly yes.[59]

We next consider whether the specification fails to allege an offense because it lacks words of criminality. In *United States v. Vaughan*, the CAAF held, "[a]n Article 134 offense that is not specifically listed in the *MCM* must have *words of criminality* and provide an accused with *notice* as to the ele-

---

[57] Article 120(d), 120(f), UCMJ, where "child" is defined under Article 120(t)(9) as any person under the age of 16 years.

[58] *See* Article 120(a), 120(c), 120(e), and 120(h).

[59] This offense is of a fundamentally different nature than attempted enticement under 18 U.S.C. § 2422(b). However, the question whether this offense merited the same maximum punishment as 18 U.S.C. § 2422(b) was waived, and we do not answer it.

ments against which he or she must defend."[60] As such, the hallmarks of a valid Article 134 Clause 2 offense are words of criminality and notice.

We first note that "[t]he military is a notice pleading jurisdiction"[61] in which:

> A charge and specification will be found sufficient if they, "first, contain[ ] the elements of the offense charged and fairly inform[ ] a defendant of the charge against which he must defend, and, second, enable[ ] him to plead an acquittal or conviction in bar of future prosecutions for the same offense."[62]

For our purposes, "[a] specification is sufficient if it alleges every element . . . expressly or by necessary implication."[63] But in this case, there is not a specific element that has been omitted because this is a novel offense that alleged both of the elements under Article 134, UCMJ: an act (attempting to entice) and the terminal element.

Here, there is no question that Appellant was on notice of the Government's theory of liability or that he knew it was wrongful to solicit a 13-year-old boy for sex. Appellant knew through review of the investigative materials provided that the Government alleged he attempted to entice a 13-year-old boy we refer to as Ryan. The only question is whether the specification contained sufficient words of criminality.

In evaluating whether the specification contains words of criminality, we are not looking for "magic" words. The mere failure to include the word "wrongfully" does not necessarily render a specification invalid. But inclusion of the word "wrongfully" *can* render an otherwise insufficient specification sufficient.[64] So, too, can an explicit reference to the statute or instruction

---

[60] 58 M.J. 29, 35 (C.A.A.F. 2003) (emphasis added) (citing *United States v. Davis*, 26 M.J. 445, 447 (C.M.A. 1988)).

[61] *United States v. Fosler,* 70 M.J. 225, 229 (C.A.A.F. 2011).

[62] *Id.* (alterations in original) (quoting *Hamling v. United States,* 418 U.S. 87, 117 (1974)).

[63] *Id.* (quoting Rule for Courts-Martial [R.C.M.] 307(c)(3)).

[64] *See Crafter*, 64 M.J. at 211-12 (discussing *United States v. Russell*, 47 M.J. 412, 413 (C.A.A.F. 1998), in which the CAAF held the word "wrongfully" implied "guilty knowledge" and in turn "knowing[ ] possess[ion].")

alleged to have been violated.[65] The word "wrongfully" was not included; a statutory reference was not applicable;[66] and the specification failed to identify Ryan as a child under the age of 16. We must therefore determine whether the specification nevertheless contains words of criminality and states an offense.

The Government argues this specification "alleges every element . . . by necessary implication" within the meaning of R.C.M. 307(c)(3).[67] It also argues that "[b]y alleging the Victim by name," because the victim "had not attained the age of 18 years," the specification necessarily implied that Ryan was under 16 years old.[68] The Government next argues that the presence of a mens rea element (*knowingly* attempted to persuade, induce, and entice) "provides the words of criminality necessary to state an offense."[69] The Government analogizes from *Elonis v. United States*[70] and *United States v. Fosler*[71] to argue that, because mens rea is an important aspect of criminality, the allegation of a mens rea in the specification itself constitutes words of criminality.

As Appellant did not challenge the specification at trial or during his rehearing, he is entitled only to plain error review. Here, we find any error, if error, is not plain or obvious because at least one other military court of criminal appeals has held that allegation of a terminal element in an Article 134, UCMJ, offense constitutes words of criminality. The Coast Guard Court

---

[65] *See id.* (noting that the specification's reference to the Joint Ethics Regulation—and its attendant definitions of bribery—sufficiently stated an Article 92 offense for bribery).

[66] Although the Government used 18 U.S.C. § 2422(b) as a guide, it did not allege two of its elements. Nevertheless, the Government invoked its maximum punishment.

[67] Appellee's Response to Additional Specified Issue of 6 Jan 2020 at 11 (quoting R.C.M. 307(c)(3)).

[68] *Id.* at 13-14.

[69] *Id.* at 16. We note that the mens rea of "knowingly" is subsumed in the offense of attempt, of which Appellant could not be found guilty unless he had a specific intention to commit the underlying crime and took a substantial step toward its completion. Because specific intent is a greater mens rea than knowingly, the presence of the word knowingly is superfluous. An unknowing attempt is a legal impossibility.

[70] 135 S. Ct. 2001 (2015).

[71] 70 M.J. 225 (C.A.A.F. 2011).

of Criminal Appeals so held in *United States v. Tevelien,*[72] explicitly overruling *United States v. Hughey,*[73] in which a panel of that court had held the opposite was true.[74] Whether or not this Court would elect to follow the Coast Guard court's rationale in *Tevelien,* the mere fact that a sister service court has vacillated on this legal question demonstrates that any error is not clear or obvious.

Accordingly, we do not find that Appellant is entitled to relief. We note that the Government would have avoided these appellate issues—albeit belatedly raised—had it elected to draft this specification in any of the several ways this Court and our superior court have previously affirmed.[75]

## B. Uncharged Propensity Evidence

Appellant argues the military judge erred by admitting uncharged misconduct evidence under Military Rule of Evidence [M.R.E.] 414. Specifically, the military judge permitted the Government to present Alex's and Pete's enticement allegations—conduct of which Appellant was acquitted at his first

---

[72] 75 M.J. 708 (C.G. Ct. Crim. App. 2016).

[73] 72 M.J. 809 (C.G. Ct. Crim. App. 2013).

[74] In *United States v. Farence,* 57 M.J. 674 (C.G. Ct. Crim. App. 2002) a CGCCA panel had held that the Clause 1 terminal element was sufficient to constitute words of criminality in a case in which actual prejudice to good order and discipline resulted when a Service Member shared images depicting pornography and bestiality in the workplace.

[75] *See United States v. Pierce,* 70 M.J. 391 (C.A.A.F. 2011) (affirming novel Clause 1 and 2 specification alleging Pierce "wrongfully and knowingly attempt[ed] to persuade, induce, entice, or coerce 'Anastasia,' someone he thought was a female 13 years of age, . . . to engage in sexual activity in violation of Title 18, United States Code, Section 2422"); *see also Schell,* 72 M.J. 339 (reviewing specification alleging Schell "knowingly attempt[ed] to persuade, induce or entice an individual known to him by [a] screen name, . . . a person [Schell] believed to be less than 18 years of age, by means or facility of interstate commerce, to wit: the internet, to engage in sexual activity which, if undertaken, would constitute a criminal offense under Article 120 of the Uniform Code of Military Justice, in violation of 18 U.S. Code Section 2422(b)," but reversing Schell's guilty plea as improvident because the military judge did not elicit the "substantial step" element of attempt); s*ee also United States v. Hickerson,* 71 M.J. 659, 663 (N-M. Ct. Crim. App. 2012) (rejecting challenge to an apparent Clause 1, Clause 2, and Clause 3 Article 134 offense alleging a violation of 18 U.S.C. § 2422(b) because the specification did not expressly allege an underlying state statute violation that would result from the attempted sex with the purported 13-year-old child).

court-martial. Appellant further argues the evidence was not admissible under M.R.E. 404(b)[76] and that the military judge conducted the M.R.E. 403 balancing test improperly. Appellant focuses his argument on the contention that, although the Government could prove by a preponderance of the evidence that Alex and Pete were victims of an offense of child molestation, by some *unknown offender,* the Government could not prove *Appellant* committed those offenses because the identity of the perpetrator was unproven.

We review such rulings to admit or exclude evidence for an abuse of discretion.[77] "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable, or clearly erroneous.'"[78]

Military Rule of Evidence 414 is an exception to the general rule against propensity evidence. The rule permits the military judge to admit evidence that the accused committed "any other offense of child molestation," and such evidence "may be considered on any matter to which it is relevant."[79] Thus, "inherent in M.R.E. [414] is a general presumption in favor of admission."[80]

---

[76] Although the Defense moved in limine to preclude admission of the evidence under M.R.E. 404(b), 413, and 414, the military judge admitted the evidence under M.R.E. 414. He addressed both Defense motions in the same ruling. AE XLVII. When instructing the members how they could use the evidence, he also noted the evidence could be used for some M.R.E. 404(b) purposes, such as identity, motive, common scheme, or plan. Record at 615.

[77] *United States v. Ediger*, 68 M.J. 243, 248 (C.A.A.F. 2010).

[78] *United States v. White*, 69 M.J. 236, 239 (C.A.A.F. 2010) (quoting *United States v. Lloyd*, 69 M.J. 95, 99 (C.A.A.F. 2010)).

[79] Mil. R. Evid. 414.

[80] *United States v. Berry*, 61 M.J. 91, 95 (C.A.A.F. 2005). The court in *Berry* was specifically dealing with M.R.E. 413, but the court's analysis applies to both M.R.E.s 413 and 414. *See United States v. Tanner*, 63 M.J. 445, 448-49 (C.A.A.F. 2006) (noting the similar legislative history with M.R.E. 413, its "companion rule," and finding that M.R.E. 414, like M.R.E. 413, establishes a presumption in favor of admissibility of evidence of prior similar crimes in order to show predisposition to commit the designated crimes); *United States v. Luna*, No. 201500423, 2017 CCA LEXIS 314, at *13-18 (N-M. Ct. Crim. App. May 9, 2017) (unpub. op.) (analyzing propensity evidence admitted under M.R.E. 414 using the same standards applied to M.R.E. 413), aff'd, 77 M.J. 198 (C.A.A.F. Jan. 10, 2018) (summary disposition).

*1. Military Rule of Evidence 414 threshold factors*

Before admitting evidence under M.R.E. 414, three threshold factors must be met: (1) the accused is charged with an offense of child molestation within the meaning of M.R.E. 414(d); (2) the proffered evidence shows the accused committed another offense of child molestation within the meaning of M.R.E. 414(d); and (3) the proffered evidence is logically relevant under M.R.E. 401 and 402.[81] To meet the second requirement, the military judge must conclude that the members "could find by [a] preponderance of the evidence that the offenses occurred . . . ."[82]

Once the military judge finds the three threshold factors are met, "the military judge is constitutionally required to also apply a balancing test under M.R.E. 403" to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.[83] In *United States v. Wright,* the CAAF articulated the following balancing test.

> [I]n conducting this balancing test, the military judge should consider the following non-exhaustive factors . . . : [1] strength of proof of the prior act (i.e., conviction versus gossip); [2] probative weight of the evidence; [3] potential for less prejudicial evidence; [4] distraction of the factfinder; [5] time needed for proof of the prior conduct; [6] temporal proximity; [7] frequency of the acts; [8] presence or lack of intervening circumstances; and [9] the relationship between the parties.[84]

This analysis of the M.R.E. 403 factors also encompasses the third prong of the *Reynolds* M.R.E. 404(b) test.

If the "balancing test requires exclusion of the evidence, the presumption of admissibility [that is inherent within M.R.E. 413] is overcome."[85] "When a military judge articulates his properly conducted M.R.E. 403 balancing test

---

[81] *United States v. Solomon*, 72 M.J. 176, 179 (C.A.A.F. 2013).

[82] *United States v. Wright*, 53 M.J. 476, 483 (C.A.A.F. 2000) (citing *Huddleston v. United States*, 485 U.S. 681, 689-90 (1988)).

[83] *Solomon*, 72 M.J. at 179-80 (citing *Berry*, 61 M.J. at 95).

[84] *Id*. at 180 (citing *Wright*, 53 M.J. at 482) (number bullets added).

[85] *Berry*, 61 M.J. at 95 (citing *Wright*, 53 M.J. at 482-83).

on the record, the decision will not be overturned absent a clear abuse of discretion."[86]

Appellant contests the military judge's treatment of the second and third threshold factors under M.R.E. 414 and the military judge's M.R.E. 403 balancing test applying the *Wright* factors. We evaluate these arguments in turn.

### a. Military Rule of Evidence 414 threshold factors two and three.

Appellant argues the military judge erred when finding the second and third factors were met because he focused his analysis on whether *offenses occurred* rather than whether *Appellant* committed those offenses. We note the Defense conceded at trial that the first two factors under M.R.E. 414 were met.[87] However, since the identity concerns relate to the analyses under M.R.E.s 401-403, we will discuss them. Appellant argues that "the military judge's analysis failed to account for the significant identification issues at the first trial which resulted in [Appellant's] acquittal on the charges involving" Alex and Pete.[88] Appellant cites *United States v. Solomon* and argues that, as in *Solomon,* the military judge "failed to account for . . . weaknesses in the evidence."[89] We disagree.

The military judge issued a written ruling incorporating the defense counsel and trial counsels' extensive recitation of the facts. He recited the proper law. Although he styled his language similar to that used in *Wright*, which required him to conclude that members "could find by [a] preponderance of the evidence that the offenses occurred,"[90] the full context of his ruling clearly demonstrates that he evaluated the evidence in light of whether members could find *Appellant* committed those offenses.

---

[86] *Solomon*, 72 M.J. at 180 (citing *United States v. Manns*, 54 M.J. 164, 166 (C.A.A.F. 2000)).

[87] Appellate Exhibit (App. Ex.) XLVII at 3 n.4; *see also* Record at 159-60. The military judge went on to note that M.R.E. 414(d)(2)(A) and (G) define "child molestation" as "any conduct prohibited by Article 120 and committed with a child, or an attempt to engage in [said conduct] M.R.E. 414." App. Ex. XLVII at 3 n.5 (internal quotation marks omitted) (alteration in original).

[88] Appellant's Brief of 18 Sep 2017 at 16.

[89] *Id.* at 19.

[90] *Wright*, 53 M.J. at 483 (citing *Huddleston*, 485 U.S. at 689-90).

To summarize the evidence available to the military judge on this motion, Pete did not identify Appellant during a photo lineup, specifically denying that Appellant's photo depicted the suspect who solicited him. But Pete recognized Appellant's car, pointed it out to his mother, and his mother was able to note the license plate number. Alex picked Appellant's photograph out of the lineup, although he stated he remembered the suspect had spiked blond hair. Alex later recognized the suspect's vehicle, which—after his mother spoke to Pete's mother—was found to be Appellant's vehicle. And Appellant sped off—arguably because he realized he was being followed after driving slowly through the residential neighborhood where Alex and Pete were solicited—driving as fast as 55 miles-per-hour through a 25 mile-per-hour residential zone. Both Alex's and Pete's descriptions of the suspect's vehicle were similar to the vehicle Ryan separately described. The three boys reported similar attempts to entice them, occurring close in time and in the same geographic region. And Ryan also identified Appellant during a photo lineup, which was conducted using a double-blind procedure in which the lineup administrator had no knowledge of the case. When Alex's and Pete's allegations are analyzed independently, each witness's account was similar to Ryan's and relayed similar descriptions of Appellant or his vehicle.

Aside from thoroughly analyzing this second factor, the military judge also identified several relevant bases for admission of the evidence. Based on these facts and the similarity in behavior between the offenses, we cannot find that the military judge's ruling relating to these factors was "arbitrary, fanciful, clearly unreasonable, or clearly erroneous."[91]

We reject Appellant's comparison of this case to *Solomon.* In *Solomon,* the CAAF found that the military judge made "unexplained and unreconciled leaps from the evidence presented to his findings of fact" when he found that:[92] (1) Solomon was *leaving* the base, whereas the undisputed evidence showed he was *entering* the base at a crucial time; (2) when he misstated the time of the attacks, which were irrefutably established to have taken place between 0230-0300, as having taken place "at night or in the early morning hours"; and (3) when he failed to discuss the fact that Solomon was known to have been in *police custody* from 0230-0300 when the attacks occurred. We find no similar errors here.

---

[91] *White*, 69 M.J. at 239 (citation omitted).

[92] *Solomon*, 72 M.J. at 181.

b. Military Rule of Evidence 403 balancing (*Wright* factors)

Appellant argues the military judge improperly conducted the M.R.E. 403 balancing test. Specifically, Appellant argues the military judge "completely overlooked the time and impact" of the uncharged misconduct evidence. We disagree. The military judge issued a written ruling that discussed all of the *Wright* factors in detail.

### (1) Strength of proof of the prior act (i.e., conviction versus gossip)

In his written findings addressing the first *Wright* factor, the military judge correctly noted that Alex's and Pete's allegations were more than mere gossip. They were documented in sworn statements and described under oath during a pretrial deposition *and* during Appellant's first trial. The military judge correctly noted that admission of this evidence was not barred by the prior acquittals.[93] The fact that the members at Appellant's prior court-martial were not convinced *beyond a reasonable doubt* that Appellant committed the acts against Pete and Alex does not mean that the military judge and the members at his subsequent court-martial could not be convinced *by a preponderance of the evidence* that he did so.

### (2) Probative weight of the evidence

In addressing the probative weight of the evidence, the military judge stated that the evidence was probative "not only to the accused's propensity to engage in this conduct, but also as to motive, intent, common scheme or plan, or absence of mistake."[94] He also noted the evidence could show what Appellant meant by asking Ryan for "a quickie" and how Appellant came to the attention of law enforcement.[95] Further, he concluded that the probative weight was heightened by the similarities to the charged offense. All three alleging victims were young boys approached by a man driving a silver or white SUV while they were walking home alone from school. The driver solicited sexual acts using hand gestures and verbal comments while slowly driving by them.

---

[93] App. Ex. XLVII at 4.

[94] *Id.*

[95] *Id.*

(3) Potential for less prejudicial evidence; distraction of the fact-finder; time needed for proof of the prior conduct

The military judge found there was no less prejudicial evidence. He also noted he intended to "limit . . . distraction to the fact-finder through limiting instructions and tailored direct and cross-examination."[96] Our review of the record indicates the military judge followed through on this commitment at trial, ensuring a minimum amount of time was focused on the propensity evidence and providing appropriate limiting instructions during both the testimony and in his final instructions. The trial counsel followed the military judge's limitations and properly focused the Government's case and closing argument on the charged offenses involving Ryan.

(4) Temporal proximity; frequency of the acts; presence or lack of intervening circumstances; relationship between the parties

Concerning these *Wright* factors, the military judge's written findings noted that Alex and Pete made allegations days apart and approximately five months after the charged misconduct. He noted there were no intervening circumstances that would diminish the probative value of the evidence, and that the parties were not related, and concluded that these factors weighed in favor of admission.

(5) Summary

Considering the entirety of the military judge's ruling, we find that the military judge properly conducted the M.R.E. 403 balancing test. We find that his ruling was within the "range of choices reasonably arising from the applicable facts and the law."[97] We therefore find no abuse of discretion in the admission of this evidence.

## C. Military Judge's Instructions

Appellant next claims the military judge erred by failing to instruct the members that they were required to find the uncharged propensity misconduct occurred by a preponderance of the evidence. We disagree.

*1. The instruction*

After the close of the Government's case and prior to a weekend recess, the Defense requested that the military judge provide a limiting instruction

---

[96] *Id.* at 5.

[97] *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015).

relating to the M.R.E. 414 evidence. The Defense-offered instruction included the following admonition, which was contained in the Military Judge's Benchbook in effect at the time of trial: "This evidence may have no bearing on your deliberations unless you first determine by a preponderance of the evidence, that is more likely than not, these uncharged offenses occurred."[98]

The parties discussed the proposed instruction with the military judge in two R.C.M. 802 conferences, which were summarized on the record during two separate Article 39(a), UCMJ, sessions. During the first Article 39(a) session, the military judge stated that based on *United States v. Williams,*[99] he would not instruct the members that they had to find Appellant committed the uncharged offenses by a preponderance of the evidence before they could consider those uncharged offenses under M.R.E. 414.[100] During the second Article 39(a) session, just before providing the limiting instruction to the members before the weekend recess, the military judge summarized the parties' second R.C.M. 802 conference on the proposed instruction. The following exchange took place.

> MJ: During the recess, I provided the parties with a proposed limiting instruction regarding M.R.E. 414 evidence. Defense counsel had proposed a change. The Government objects to that change, and I'm going to go with . . . what I originally drafted, which the Defense concurs with.
>
> Defense counsel, do you agree with the instruction that the court provided you during the 802?
>
> DC: With the one strike, yes, sir.
>
> MJ: No objections to any other aspect of it?
>
> DC: No, sir.[101]

The record does not demonstrate whether the "one strike" referred to the Defense-requested sentence relating to the preponderance of the evidence

---

[98] Contained in App. Ex. CXI.

[99] 75 M.J. 621 (A. Ct. Crim. App. 2016). The case was reversed and remanded in light of *United States v. Hills*, 75 M.J. 350 (C.A.A.F 2016), due to charged propensity misconduct which is not the issue in the present case. *United States v. Williams*, 75 M.J. 430 (C.A.A.F. 2016).

[100] Record at 490.

[101] *Id.* at 518.

standard. The military judge provided a limiting instruction, then the court recessed for the weekend. After both sides rested, the military judge asked the parties their positions on the proposed findings instructions and whether they had any objections not already stated. The trial defense counsel noted an objection to the reasonable doubt instruction but then said the Defense had no further objections.

The military judge instructed the members that they could consider the uncharged sexual misconduct pursuant to M.R.E. 414, as evidence of Appellant's propensity to commit the charged sexual misconduct, and pursuant to M.R.E. 404(b), as evidence of Appellant's identity, motive or common scheme or plan:

> You heard evidence that the accused may have committed other offenses upon [Alex] and [Pete]. The accused is not charged with these other offenses and was previously acquitted of these offenses at a prior proceeding. You may, however, consider the evidence of those offenses involving [Alex] or [Pete] for its bearing on any matter to which it is relevant in relation to the charged offenses. You may consider the evidence related to [Alex] and [Pete] for its tendency, *if any*, to show the accused's propensity or predisposition to engage in similar offenses, as well as its tendency, *if any*, to establish among other possible things, identity, motive, or common scheme or plan. You may not, however, convict the accused solely because you believe he committed these other offenses, or solely because you believe the accused has a propensity or predisposition to engage in similar acts. In other words, you cannot use this evidence to overcome a failure of proof in the government's case, if you perceive any to exist.[102]

*2. The law*

"Whether a panel was properly instructed is a question of law reviewed de novo."[103] Whether an appellant has waived an issue is a question of law we also review de novo.[104]

---

[102] *Id.* at 615 (emphasis added). This instruction is substantially similar to the instruction the military judge read before the weekend recess.

[103] *United States v. Ober*, 66 M.J. 393, 405 (C.A.A.F. 2008).

[104] *United States v. Ahern*, 76 M.J. 194, 197 (C.A.A.F. 2017).

"Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known right.'"[105] When an appellant has "intentionally waive[d] a known right at trial, it is extinguished and may not be raised on appeal."[106] Forfeited objections to evidence are reviewed for plain error, which exists where: (1) an error was committed; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to substantial rights.[107]

In his brief, Appellant does not argue that the Defense preserved an objection to the instruction. Appellant does not explicitly state whether he believes the trial defense counsel's statements amounted to waiver.[108] However, he cites *United States v. Davis*, a 2017 CAAF case applying the plain error standard, and urges us to apply the plain error standard.[109] Assuming without deciding that Appellant forfeited, rather than waived, his right to object to the military judge's instructions, we find no error.

### 3. Plain error analysis

Appellant contends that the military judge's instructions should have contained the following language: "This evidence may have no bearing on your deliberations *unless you first determine by a preponderance of the evidence, that is more likely than not, these uncharged offenses occurred.*"[110]

The military judge discussed the Defense's request to give this instruction. However, he believed procedurally the initial requirement had been fulfilled once he made the admissibility analysis under M.R.E. 414 and explained to the members that Appellant had been acquitted of those offenses.[111] Although he partially relied on *Williams*, he also compared the request-

---

[105] *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (quoting *United States v. Olano*, 507 U.S. 725 (1993).

[106] *Id.; see also Davis,* 79 M.J. 329.

[107] *United States v. Hardison*, 64 M.J. 279, 281 (C.A.A.F. 2007) (citing *United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998)).

[108] *See* Appellant's Motion for Leave to File Supplemental Assignment of Error and Supplemental Assignment of Error of 16 February 2018 at 4. This Motion was filed before the CAAF decided *United States v. Davis,* 79 M.J. 329.

[109] *See id.; Davis*, 76 M.J. at 229.

[110] Appellant's Supplemental Brief of 16 Feb 2018 at 3 (emphasis added) (citing Dept. of the Army Pamphlet 27-9 at ¶ 7-13-1 (20 Mar 2015)).

[111] Record at 490, 522, 615.

ed instruction to more traditional uncharged misconduct instructions under M.R.E. 404(b). He noted the members are generally permitted to give their own assignment of weight to uncharged M.R.E. 404(b) evidence once the judge has properly determined admissibility.

Appellant offers no authority to show that the military judge erred in his refusal to instruct the members using the preponderance standard.[112] The military judge twice instructed the members that they could determine the tendency of the evidence, *if any*, to show that the Appellant engaged in the charged misconduct. And he emphasized that the members could not convict Appellant solely based on propensity.

Accordingly, we find that the military judge did not commit error, and certainly not plain or obvious error, when instructing the members how to use the uncharged misconduct evidence, which is in line with the use of such evidence in Article III federal courts.[113] The military judge repeatedly instructed the members: (1) that Appellant was acquitted of the misconduct alleged by Alex and Pete; (2) that the members must presume Appellant innocent of the charged offenses; (3) that Appellant could not be convicted based on propensity alone; and (4) that the burden remained with the Government to prove guilt beyond a reasonable doubt. We find the military judge's instructions were proper.

## D. Improper Referral

In his third AOE, Appellant argues the military judge erred by denying Appellant's motion to withdraw charges from the court-martial due to the involvement of Col W as staff judge advocate [SJA] to the convening authority. Prior to Appellant's first trial in 2012, Col W served as the Regional Trial Counsel (RTC), in which role he exercised a supervisory role over the prosecution of all cases at Camp Lejeune. In this role, he detailed a complex trial-qualified trial counsel to assist the assigned trial counsel with this case.

---

[112] *United States v. Schroder*, 65 M.J. 49, 54, 56 (C.A.A.F. 2007) (finding the military judge is not "required to disaggregate the [414] instruction" and that a M.R.E. 414 instruction must state "the introduction of such propensity evidence does not relieve the government of its burden of proving every element of every offense charged. Moreover, the factfinder may not convict on the basis of propensity evidence alone"). We note both of these requirements were contained in the military judge's instructions here.

[113] *Huddleston*, 485 U.S. at 690 (finding that the trial court "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact . . . by a preponderance of the evidence").

Colonel W completed his eight-month RTC tour shortly thereafter, months before Appellant's first trial began.[114]

Several years later, after the CAAF reversed Appellant's conviction and authorized a rehearing on the charges involving Ryan, Col W was serving as the convening authority's SJA. In this role, Col W prepared the Article 34, UCMJ, pretrial advice letter recommending referral of Appellant's charges to general court-martial for a rehearing. Consistent with Col W's recommendation, the convening authority referred the charges. Appellant moved to dismiss the charges, arguing that Col W was disqualified because, by previously detailing a trial counsel to the case, he had *himself* served as trial counsel for the first trial within the meaning of Article 6(c), UCMJ, which prohibits anyone who has *acted* as trial counsel from serving as an SJA in the same case.

The military judge found as fact that "[n]either Col [W] nor any other member of the prosecution recall the extent that [he] personally participated in the prosecution of [Appellant's] case (if at all)."[115] The military judge ruled "in the exercise of an abundance of caution," that Col W was disqualified from advising the convening authority in this case.[116] However, he did not grant the Defense-requested remedy that charges be withdrawn. Instead, he required another uninvolved, qualified SJA to provide new Article 34 advice, after which the convening authority was to indicate in writing whether he still desired to "adhere to his previous decision to refer the charges."[117]

The deputy SJA provided Article 34 advice to the convening authority, while charges remained referred. The new letter explained the military judge's ruling, the reason for Col W's disqualification, and advised the convening authority, "[Y]ou *may* affirm your desire to adhere to your previous" referral decision.[118] After receiving this advice, the convening authority signed a memorandum indicating that he reviewed the new Article 34,

---

[114] App. Ex. XXXIII at 2 ("[H]e ceased being the RTC on 14 March 2013" and the first court-martial "was conducted in August 2013").

[115] App. Ex. XLII at 1.

[116] *Id.* at 2.

[117] *Id.* at 3.

[118] Pretrial Advice in the Case of *United States v. Corporal Matthew P. Hoffmann, USMC*, dated 27 Sep 2016, signed by the Deputy Staff Judge Advocate (emphasis added).

UCMJ, advice and that his prior decision to refer the remaining charges to general court-martial remained "unchanged."[119]

Appellant argues the military judge's "ruling fell short" because the remedy did not take into account the fact that Col W, Appellant speculates, must have been involved in the decisions the convening authority made after the CAAF remanded his case.[120] Specifically, he alleges it is "very likely" that Col W advised the convening authority on the threshold issues of whether to keep Appellant in confinement pending a rehearing and whether to hold a rehearing at all.[121] As such, he argues "the charges should have been withdrawn and a new [SJA] appointed."[122] Notably, Appellant does not state that he suffered any prejudice from this alleged error, nor does he state the relief he now desires from this Court. We find the military judge did not err and that Appellant suffered no prejudice. Accordingly, we grant no relief.

Whether an individual is disqualified from acting as an SJA is a legal question reviewed de novo.[123] Assuming, without deciding, that the military judge properly disqualified Col W, we do not find Appellant was prejudiced by the military judge's refusal to order charges withdrawn. Appellant is entitled to relief only if he can show "material prejudice" to his "substantial rights."[124] In this case, the deputy SJA independently re-advised the convening authority who, fully aware he could reach a different decision, reaffirmed his decision to conduct a rehearing at general court-martial. Even if Col W did, as Appellant claims, advise the convening authority to maintain Appellant in pretrial confinement, Appellant's counsel requested and received de novo review of Appellant's pretrial confinement status by the military judge. Thus every decision that was or may have been subject to Col W's advice was either revalidated or independently reviewed. Finding no "colorable showing of prejudice," we reject Appellant's claim.[125]

---

[119] Commanding General, II Marine Expeditionary Force, memorandum of 29 Sep 2016.

[120] Appellant's Brief of 18 Sep 2017 at 31.

[121] *Id.* at 32.

[122] *Id.* at 33.

[123] *United States v. Stefan*, 69 M.J. 256, 258 (C.A.A.F. 2010).

[124] *Id.* at 259 (citing Art. 59(a), UCMJ).

[125] *Id.*

**E. Military Judge Recusal**

Appellant's fourth AOE arises from the fact that the military judge who presided over Appellant's 2016 rehearing had previously served as the officer-in-charge [OIC] of the Legal Services Support Section [LSSS] that prosecuted Appellant's case. The military judge detached from the LSSS shortly before charges were preferred in May 2012. During the investigation stage, however, the military judge supervised the prosecution office and exercised administrative control over the defense offices for Camp Lejeune.[126]

As LSSS OIC, the military judge was in the fitness report rating chain for the supervisory prosecutor. The OIC delegated authority to the supervisory prosecutor to detail trial counsel to cases, and the supervisory prosecutor "generally oversaw the prosecutorial function," meaning the OIC did neither.[127] However, the supervisory prosecutor would "periodically brief [the OIC] on important cases."[128] On a day-to-day basis, the OIC "predominantly" dealt with "administration and personnel with an emphasis on personnel because of . . . ongoing deployments."[129]

At trial, the Defense argued that during his time as LSSS OIC the military judge must have been aware of the facts of Appellant's case because NCIS reports contained a distribution block that included the LSSS OIC as a listed recipient. However, the military judge informed the parties he had no recollection of ever having received a report of investigation relating to Appellant. He had no recollection of receiving a brief on Appellant's case and stated that he would not speculate as to what happened "four years ago" because it "would be pure conjecture."[130] After permitting thorough voir dire by the defense counsel, the military judge stated on the record that he had "thought hard" and determined he had "absolutely no recollection of participating in any aspect of the investigation, pre-preferral process, or preferral of charges" against Appellant, even after having presided over two motions sessions, read "several hundred documents," and read both the *Hoffmann I* and *Hoffmann*

---

[126] This office was later reorganized to remove the defense function from falling under the same chain of command as the prosecutors.

[127] Record at 99.

[128] *Id.*

[129] *Id.* at 96.

[130] *Id.* at 99.

*II* opinions.[131] Accordingly he found he could remain impartial and he denied the motion to recuse himself, also issuing a written ruling.[132]

Appellant argues recusal would have "avoided any appearance of conflict," an error which he argues "requires reversal."[133] Appellant also juxtaposes the military judge's refusal to recuse himself against the military judge's ruling disqualifying Col W as the SJA. According to Appellant, had the military judge applied the same standard that he applied to Col W, the military judge would have had to recuse himself. Appellant does not allege any of the military judge's findings of fact were clearly erroneous, nor does he allege the military judge applied the wrong legal principles.

We review a military judge's decision not to recuse himself for an abuse of discretion—meaning that the military judge's decision was "arbitrary, fanciful, clearly unreasonable or clearly erroneous . . . ."[134] "An accused has a constitutional right to an impartial judge."[135] "There is a strong presumption that a judge is impartial."[136] The party seeking recusal "has the burden of establishing a reasonable factual basis for disqualification," which requires more than "mere surmise or conjecture."[137]

Disqualification is required when "that military judge's impartiality might reasonably be questioned."[138] The test under R.C.M. 902(a) is an objective one, asking whether there exists "[a]ny conduct that would lead a reasonable man knowing all the circumstances to the conclusion that the judge's impartiality might reasonably be questioned."[139] Because this objective test assumes the reasonable person knows all of the pertinent facts, the "judge's

---

[131] *Id.* at 15-16.

[132] App. Ex. XLIV.

[133] Appellant's Brief at 39.

[134] *United States v. Sullivan,* 74 M.J. 448, 453 (C.A.A.F. 2015) (citation omitted).

[135] *United States v. Butcher*, 56 M.J. 87, 90 (C.A.A.F. 2001) (quoting *United States v. Wright*, 52 M.J. 136, 140 (C.A.A.F. 1999)).

[136] *United States v. Quintanilla*, 56 M.J. 37, 44 (C.A.A.F. 2001).

[137] *Wilson v. Ouellette*, 34 M.J. 798, 799 (N.M.C.M.R. 1991) (citing *Untied States v. Allen*, 31 M.J. 572, 601, 605 (N.M.C.M.R. 1990)).

[138] R.C.M. 902(a).

[139] *Butcher*, 56 M.J. at 91 (internal quotation marks omitted) (quoting *United States v. Kincheloe*, 14 M.J. 40, 50 (C.M.A. 1982)).

statements concerning his intentions and the matters upon which he will rely are not irrelevant to the inquiry."[140]

Appellant does not argue that the military judge exhibited actual bias; he merely challenges the military judge based on the appearance of bias. "The appearance standard is designed to enhance public confidence in the integrity of the judicial system" and to "reassure the parties" themselves that the proceedings are fair.[141]

We find that the military judge did not abuse his discretion by denying the recusal motion. Appellant did not meet his burden to overcome the presumption of the military judge's impartiality. Appellant presented no evidence that the military judge ever had *actual knowledge* of the facts of Appellant's case in 2012 as it was being investigated. Nor did he present evidence the military judge had *acted* as trial counsel.

Appellant presented no evidence to suggest the military judge *ever knew* of Appellant's case, or if he had, that he *still remembered* any related facts four years later. The military judge stated on the record that he had no recollection of the case whatsoever and that he would have no difficulty remaining impartial.

In *United States v. Sullivan,* the CAAF reviewed the decision of the Coast Guard's sole general-court-martial-qualified military judge not to recuse himself in a case in which he had "a personal or professional relationship with nearly everyone involved in the court-martial."[142] Additionally, the judge reported directly to the Coast Guard Judge Advocate General [JAG], and when the defense indicated it might request the JAG as a witness, the military judge took the unusual step of informing the Deputy JAG of this development as a "courtesy."[143] The CAAF held that the military judge did not abuse his discretion by denying the joint defense-government motion to recuse himself for two reasons. First, the court noted "the military judge specifically stated on the record that none of his associations . . . would influence any of his decisions."[144] Second, the appellant "ha[d] not identified any con-

---

[140] *Wright*, 52 M.J. at 141.

[141] *Quintanilla*, 56 M.J. at 45 (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988)).

[142] *United States v. Sullivan*, 74 M.J. 448, 456 (C.A.A.F. 2015) (Erdmann, C.J., concurring in part, dissenting in part).

[143] *Id.* at 452 (majority opinion).

[144] *Id.* at 454.

duct by the military judge which tend[ed] to demonstrate that he inappropriately influenced the panel," and he "ha[d] not pointed to any rulings that raise[d] appearance concerns."[145]

We reach the same result here. Any appearance of bias that resulted from the military judge's former role as LSSS OIC was of far less concern than was at play in *Sullivan.* Additionally, we find the facts in Appellant's case are a far cry from those at issue in *United States v. Hayes,* in which this Court held the military judge erred by failing to sua sponte recuse himself from the trial of a homosexual Marine because of the judge's anti-homosexual sentiments.[146] These sentiments were not discovered until the military judge participated in a post-trial debrief with counsel and told them, "Marines should not be required to live in the barracks with people like Seaman Hayes," and also said that "homosexuality has no place in our Armed Forces."[147]

We note the unique structure of the military justice system. As LSSS OIC, the military judge was not in the role of authorizing prosecution of cases—unlike in the case the Defense cited at trial, *Williams v. Pennsylvania.*[148] The convening authority made the decision to refer this case for trial by general court-martial. The military justice officer and his trial counsel provided prosecution advice, and the SJA independently advised the convening authority. As LSSS OIC, the military judge was not involved in the details of prosecuting specific cases, he also provided administrative supervision over the defense counsel, and at trial, he did not recall *a single detail* about Appellant's case.

We find that no reasonable observer, fully informed of the pertinent facts, could reasonably question the military judge's impartiality. We therefore hold that the military judge did not abuse his discretion in not recusing himself.

---

[145] *Id.*

[146] No. 200600910, 2010 CCA LEXIS 364 at *8 (N-M. Ct. Crim. App. Oct. 28, 2010) (unpub. op.).

[147] *Id.* at *9.

[148] *See* Record at 98, referring to *Williams v. Pennsylvania,* 136 S. Ct. 1899 (2016) (holding an appellate judge who, in his former role as a district attorney approved his prosecutors' request to seek the death penalty in a case, erred by refusing to recuse himself from appellate consideration of that same case decades later when reviewing a court that granted Williams post-conviction relief because the original prosecutors committed *Brady v. Maryland,* 373 U.S. 83 (1963), discovery violations).

## F. Sentence Disparity

Appellant argues that his sentence is highly disparate from a closely related case. To prevail on this claim, Appellant must prove: (1) "that any cited cases are closely related to his" case; and (2) that the sentences are "highly disparate."[149] Only if Appellant succeeds on both prongs will the burden shift to the Government to "show that there is a rational basis for the disparity."[150]

Examples of closely-related cases include "coactors involved in a common crime, servicemembers involved in a common or parallel scheme," or those cases which have a "direct nexus" between Appellant and the persons to whom he seeks to have his sentence compared.[151] When assessing disparity among sentences, we look only to adjudged sentences.[152]

Here, Appellant requests we compare his sentence to that awarded in *United States v. Rodriquez*.[153] In *Rodriquez*, an Army specialist "followed minor girls walking on post in his car, and then approached them and talked to them."[154] He received a sentence of a bad-conduct discharge, confinement for two years, and reduction to pay grade E-1 for his offenses, which included one specification of sexual abuse of a child by committing a lewd act.[155]

We find that Appellant has failed to carry his preliminary burden to show this cited case is closely related to his own. The two offenders were not co-actors, and there is no direct nexus between them. Rodriguez is in a different service, and he committed his offense in a different state at a different time. Even if the two cases could be argued to be closely related, there is a rational basis for the disparity. Rodriquez negotiated a pretrial agreement, entered

---

[149] *United States v. Lacy*, 50 M.J. 286, 288 (C.A.A.F. 1999).

[150] *Id.*

[151] *Id.*

[152] *See United States v. Roach*, 69 M.J. 17, 21 (C.A.A.F. 2010).

[153] No. 20130577, 2015 CCA LEXIS 551 (A. Ct. Crim. App. Dec. 1, 2015) (unpub. op.).

[154] *Id.* at *3.

[155] The appellant in *Rodriquez* was convicted of "one specification of failing to obey a lawful order, one specification of sexual abuse of a child by committing a lewd act, and six specifications of wrongfully annoying and molesting a minor in violation of California Penal Code § 647.6(a)(1), in violation of Articles 92, 120b, and 134," UCMJ, 10 U.S.C. §§ 892, 920b, and 934 (2012). *Id.* at *1-2. The Army Court of Criminal Appeals set aside the specifications charged under the California Penal Code as preempted by Article 120(b), UCMJ, and reassessed the sentence. *Id.* at *7-8.

pleas of guilty, and was sentenced by a military judge. We reject any comparison between Appellant's case and that of Rodriguez.

## G. Unreasonable Multiplication of Charges

### 1. The legal standard

In *United States v. Campbell,*[156] the CAAF clarified the doctrines of multiplicity and unreasonable multiplication of charges. The CAAF reaffirmed the test outlined in *United States v. Quiroz*[157] for evaluating an unreasonable multiplication of charges. The *Quiroz* factors are:

> (1) Did the accused object at trial that there was an unreasonable multiplication of charges and/or specifications?
>
> (2) Is each charge and specification aimed at distinctly separate criminal acts?
>
> (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?
>
> (4) Does the number of charges and specifications unreasonably increase the appellant's punitive exposure?
>
> (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?[158]

### 2. Application of Quiroz factors

In Appellant's first trial, he challenged several specifications on the basis of an unreasonable multiplication of charges. The military judge granted some of the requested relief. That prior ruling did not result in any relief during Appellant's rehearing based on the two specifications of which Appellant was convicted in his rehearing.[159] During his rehearing, his trial defense counsel re-raised the issue and asked for merger of the two specifications of which he had been convicted for sentencing.[160] However, he explicitly stated

---

[156] 71 M.J. 19 (C.A.A.F. 2012).

[157] 55 M.J. 334 (C.A.A.F. 2001).

[158] *Campbell*, 71 M.J. at 24 (citing *Quiroz*, 55 M.J. at 338) (listing *Quiroz* factor 1 in footnote 10).

[159] *See* Record at 660.

[160] *See id.* at 661.

that "we aren't challenging it for purposes of findings."[161] Accordingly, we find that Appellant waived—or "intentional[ly] relinquish[ed] or abandon[ed]"[162] his known right—to contest the issue of unreasonable multiplication of charges for the purpose of findings, but that he preserved an argument as it relates to the maximum punishment available during sentencing.

We review a military judge's ruling on a motion denying relief for unreasonable multiplication of charges for an abuse of discretion.[163] We find the military judge did not abuse his discretion. He found the two specifications were "aimed at distinctly separate acts," "one being primarily focused on the language the accused uttered, the other on his actions to induce or entice" Ryan.[164] We agree. As noted above, the Specification of Charge II alleged indecent liberties by Appellant's use of indecent language in Ryan's presence when he asked if Ryan wanted a "quickie." By contrast, the Specification of the Additional Charge related to the totality of Appellant's actions in attempting to entice Ryan to engage in sexual acts with him. The military judge then briefly assessed the remaining *Quiroz* factors, reciting each factor and merely stating that the factors were not met. We find this conclusion did not constitute an abuse of discretion.

The two different specifications for Appellant's course of conduct do not exaggerate his criminality. As noted above, we question the propriety of applying a 20-year maximum punishment to the novel Article 134, Clause 2 offense as drafted, although the 20-year figure appears to have originated with the Defense.[165] However, we decline to grant relief—if this were error—because Appellant affirmatively waived this instructional error. In light of the maximum punishment of 15 years' confinement and a dishonorable discharge to which Appellant was already exposed as a result of his conviction of Charge II, we do not find that this second offense substantially increased Appellant's punitive exposure. Although the Specification of the Additional

---

[161] *Id.* at 662.

[162] *United States v. Olano,* 507 U.S. 725, 733 (1993) (citation omitted).

[163] *See Campbell,* 71 M.J. at 22.

[164] Record at 664.

[165] During the rehearing, there was confusion on this point, and the parties believed this punishment was based on 18 U.S.C. § 2422(b). During the first trial, the trial counsel argued the maximum sentence was life, but in order to avoid this maximum confinement term, the civilian defense counsel argued the novel specification was analogous to attempted sodomy with a child under the age of 16 but over the age of 12, carrying a maximum punishment of 20 years. Original Record at 674-76.

Charge was inartfully charged, we find no prosecutorial overreach in the drafting of the charges. Our analysis comports with that of the military judge. We do not find that he abused his discretion.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and the sentence are correct in law and fact and that there is no error materially prejudicial to Appellant's substantial rights.[166] Accordingly, the findings and the sentence as approved by the convening authority are **AFFIRMED**.

Chief Judge CRISFIELD and Judge LAWRENCE concur.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[166] Arts. 59, 66, UCMJ.